JOSEPH ATWATER, Appellant, *v.* THE TRUSTEES OF THE VILLAGE OF CANANDAIGUA, Respondent.

*Eminent domain — consequential damage — temporarily depriving an owner of the use of his property, is not a taking thereof — damnum absque injuria — selection of the mode of accomplishing the result.*

While private property cannot be taken for public use without just compensation, yet no merely consequential damage to property, even though it may temporarily deprive the owner of its use, is a taking of such property within the meaning of the constitutional provision.

A farm, located upon Canandaigua lake, was flooded by reason of a coffer-dam erected in the outlet of the lake, pursuant to the provisions of an act of the legislature authorizing it to be done for the purpose of maintaining the waters of Canandaigua lake at the heighth or level specified therein.   The coffer-dam was constructed for the purpose of facilitating the building of a lock or bulk-head at the outlet of the lake and to rebuild a bridge, the former being authorized under an express act of the legislature and the latter being within the general powers of the defendants as commissioners of highways.

*Held*, that the loss was *damnum absque injuria*.   (Corlett, J., dissenting.)

That, although another mode might have been devised for accomplishing the same results, the defendants could not be charged as wrong-doers for adopting, in the absence of any legislative limitation of their discretion, the mode actually employed, where there was neither negligence nor bad faith on their part.

Exceptions ordered to be heard at the General Term in the first instance, after a trial before the court and a jury at the Ontario Circuit, at which a verdict was directed for the defendant.

*William H. Smith*, for the motion.

*T. H. Bennett*, opposed.

Dwight, P. J. :

The action was to recover damages for the flooding of a portion of the plaintiff's farm, situated on the shore of Canandaigua lake, caused by the alleged wrongful and negligent construction by the defendants of a coffer-dam in the outlet of the lake.

The evidence clearly tended to show that the loss sustained resulted from the acts of the defendants, and if the fact was not established beyond question, it was a question for the jury, unless the acts complained of were fully justified, and the resultant damage to the plaintiff, therefore, *damnum absque injuria*.

The defendants seek to justify the construction of the coffer-dam under two acts of the legislature of the State, and under their general powers as commissioners of highways of the village of Canandaigua. The special legislation referred to is found in chapter 234 of the laws of 1855, and chapter 658 of the Laws of 1886. The former act incorporated the "Ontario Hydraulic Company" for the purpose of reclaiming swamp lands on the outlet of Canandaigua lake, and furnishing a greater supply of water for the use of the mills on the stream during seasons of low water. Among other powers granted to such corporation, for the purposes mentioned, was the power to excavate a new channel for the outlet and to erect a lock or bulk-head with gates at or near the head of such new channel, and "so to control and regulate the discharge of the waters of said lake" as to secure the object of its incorporation; but the act provided that the water of the lake should not be raised above high-water mark, and that all such powers were to be exercised "subject, however, to liability for all damages occasioned thereby, actually sustained by any person whatsoever."

The Ontario Hydraulic Company excavated the new channel and put in the lock or bulk-head with gates, and operated the same to some extent for several years, when, a judgment having been recovered against it, and there being no personal property, its right, title and interest in and to the real estate it had acquired, and the channel it had dug, was sold on execution and came into the hands of an individual mill owner on the stream. The latter operated the bulk-head to some extent down to the date of the passage of the act of 1886 (*supra*).

That act, by its first section, authorized and empowered the defendants, "for the purpose of obtaining drainage and sewerage for the village of Canandaigua, and to drain and reclaim wet and swamp lands in said village, and in the towns of Canandaigua and Hopewell, in the county of Ontario, between the foot of Canandaigua lake and the dam across the outlet of said lake at Chapinville * * * to construct a public sewer along the bed of the outlet of Canandaigua lake and the new channel for the outlet of said lake, formerly constructed by the Ontario Hydraulic Company, to the dam erected across said outlet at Chapinville aforesaid; and for such purposes * * * to take and appropriate the right to use and occupy

said outlet and new channel, and may take, appropriate and remove the dam across such outlet at Chapinville aforesaid, * * * provided, always, that the rights and privileges hereby granted shall be so exercised that the waters of Canandaigua lake shall be maintained at a height not less than the ordinary height of such waters at low-water mark."

The next following sections, down to section 11 of the act, provide for the proceedings to acquire title to the lands and rights taken for the purposes mentioned, and for obtaining the money necessary to pay for such lands and rights and the expenses of such improvements.

Section 11 of the act provides that the defendants "for the purpose of maintaining the waters of Canandaigua lake at the height or level specified herein, are authorized to erect and maintain in the outlet of said lake and in the new channel for such outlet, locks or bulk-head with gates, and by such and other adequate means to so control and regulate the discharge of the waters of said lake as to fully comply with the provisions herein."

Under the provisions of the act of 1886, the defendants took proceedings to acquire the right to use and occupy the new channel and outlet of the lake for the purposes mentioned in the act, and paid to the individual proprietor before mentioned the price awarded therefor by commissioners appointed for that purpose, and thereafter proceeded to the erection of one of the structures authorized by the act. This was a lock or bulk-head with gates in the outlet of the lake, by means of which to control the discharge of the waters of the lake when obstructions in the bed of the outlet should be removed for the purposes of the sewer, and the dam at Chapinville should be taken down. They chose as the location for such structure the point where the lake road, a highway of the village, crossed the outlet by a bridge which had fallen into such disrepair as to require rebuilding; and they determined, under the powers vested in them by the act of 1886, in conjunction with their powers as highway commissioners of the village, to combine the lock or bulk-head with a bridge to take the place of the old one. It was for the purpose of facilitating the erection of this combined structure that they built the coffer-dam in question.

It must be conceded, we think, that the defendants' justification derives no aid from the act of 1855 incorporating the Ontario

Hydraulic Company. While the act of 1886 authorizes the defendants to acquire the right " to use and occupy said outlet and new channel," it does not, in terms, include the acquisition of the right of the Hydraulic Company to erect any structure therein. Further, whatever right the defendants might take under the act of incorporation of that company must, of course, be taken *cum onere*, and that company was, by its charter, expressly prohibited from raising the waters of the lake for any of its purposes above (ordinary) high-water mark, and — which seems to be conclusive upon this point — was expressly charged with "liability for all damages occasioned thereby (*i. e.*, by any of its operations) actually sustained by any person whatever."

But upon the other and principal grounds of justification, we think the defense is supported by the authorities and that the damage complained of was *damnum absque injuria*. The authority of the defendants to erect the lock or bulk-head in the outlet, and to rebuild the bridge over the same stream, was clear, the latter under their general powers as commissioners of highways of said village, and the former under the express and specific provisions of the act of 1886. The evidence is uncontradicted that the construction of the coffer-dam was necessary to enable them to perform the work. But even if another mode might have been devised for accomplishing the same result, the defendants cannot be charged as wrong-doers for adopting the mode actually employed. As was said by JOHNSON, P. J., in *Ely* v. *City of Rochester* (26 Barb., 133–136) : "The power to do the act, where no limitation is placed upon it by the sovereign authority by which it is granted, necessarily includes the right of determining upon the plan and mode of doing it." This principle must also apply, in the absence of negligence or bad faith, to justify the decision of the defendants in respect to the time when the work should be commenced. It was, in fact, begun, and, so far as the construction of the coffer-dam was concerned, completed at a stage of low water in the lake, before the spring freshets appeared. There is no charge of bad faith or negligence in this respect in the complaint, or — if the allegation of the complaint that the work was wrongfully, negligently and carelessly done, may be construed to embrace a charge of negligence in the respect mentioned — the charge is not supported by the evidence.

In point of fact, the spring freshets came and overflowed the plaintiff's land as usual, while the coffer-dam was in place and before the work was completed for which it was erected, and as a consequence the water remained on the land for a time after it would otherwise have subsided.

There is no evidence to show that there was any neglect on the part of the defendants to remove the dam as soon as it could be dispensed with, nor any lack of diligence in prosecuting the work which made its continuance necessary. Besides, upon this particular point, it does not seem to us that the time at which the dam was erected could have any effect upon the overflow of the plaintiff's land except to hasten or postpone its occurrence. Given a certain height of obstruction in the outlet, the inflow of water being constant, the lake must be raised to or held at the same height whether the obstruction were erected at a higher or lower stage of water.

But, without further discussion of the question, we are compelled to say that we find no evidence in the case which would have warranted the jury in finding that the defendants were guilty of negligence in any respect in the construction or placing of the coffer-dam, and without such finding it seems there could be no recovery by the plaintiff. That the obstruction made by the coffer-dam was not of itself a nuisance is demonstrated by the facts already considered. As was said by Mr. Justice STRONG in the case of *Northern Transportation Company* v. *Chicago* (99 U. S., 635): " That cannot be a nuisance, such as to give a common-law right of action, which the law authorizes; * * * and the grant of power by the legislature to build a bridge or construct a tunnel carried with it, of course, all that was necessary for the exercise of the power." JOHNSON, P. J., said in *Ely* v. *Rochester* (*supra*), at page 137: " It is an established maxim that no action will lie for the consequences of an act done under lawful authority if proper care and skill are exercised in performing such act." BRONSON, J., said in *Radcliff's Executors* v. *Brooklyn* (4 N. Y., 195–205): " It is absurd to say that public officers may be liable to an action for what they have done under lawful authority and in a proper manner;" and such is the uniform expression of many other cases which have been industriously collated in the brief of counsel for the defendants.

All the cases, it is true, and necessarily, recognize the constitutional rule that private property cannot be taken for public use without just compensation ; but the controlling weight of authority is to the effect that no merely consequential damage to property, even though it may temporarily deprive the owner of its use, is a taking of such property within the meaning of the constitutional provision.    In the case of the *Northern Transportation Company* v. *Chicago*, from which we have already quoted, the court say, after referring to the constitutional restriction : " But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision ; they do not entitle the owner to compensation from the State or its agents, or give him any right of action."    And that case was one in which the application of the doctrine was severe.    The defendant, in the construction of a tunnel under the Chicago river, had constructed a coffer-dam which practically excluded the plaintiff's boats from access to its wharves, and by the accumulation of debris and material of the work had equally excluded the plaintiff and its customers from its warehouses.    These acts were found to be necessary to the accomplishment of the work, and temporary in their effects, and the damage to the plaintiff was held to be consequential merely and *damnum absque injuria.*    The case is very similar to that we are considering, and we cannot but regard it as controlling upon our decision.    We can see no essential difference in the modes by which the plaintiffs in the two cases were temporarily deprived of the use of their property.    The resultant damage in the case cited was quite as direct as in the case in hand.    See, also, upon this point, the cases previously cited, and *Uline* v. *New York Central, etc., Railroad Company* (101 N. Y., 98).

We think the principles thus considered sustain the direction given by the learned trial judge for a verdict in favor of the defendant.

The motion for a new trial should be denied and judgment ordered for the defendant on the verdict.

MACOMBER, J., concurred.

CORLETT, J. (dissenting):

Canandaigua lake is a body of fresh water about sixteen miles long, and one and one-half miles wide. This action was brought to recover damages for wrongfully and negligently causing the waters of said lake to be set back and kept upon the plaintiff's farm, which consists of about seventy-eight acres of land, bounded on the lake on the easterly side. The lake at its foot had two outlets, one known as the old one, or the feeder, and the other as the Dubois outlet. The waters of the lake had flowed through the old outlet for eighty years. In 1856 it was closed thirty rods from its mouth, and a new channel constructed from that point. Since then the waters of the lake have flowed through the thirty rods of the old channel, and thence through the new.

The defendants built a coffer-dam across the old channel in March, 1888. It was six feet high, water tight, and prevented the water, which had accumulated during the floods on the plaintiff's land, from flowing as usual through the channel. The waters by this dam were raised five feet. Before its erection there would be floods, especially in the spring, which would cause the waters of the lake to set back and cover portions of plaintiff's land; but it would remain upon it but a short time, inflicting no special damage. Soon after the erection of the coffer-dam the plaintiff's pasture land was flooded, and kept covered by the waters of the lake, the dam preventing its escape, the effect of which was to destroy the pasturage on a large portion of the plaintiff's farm in the season of 1888, and inflict upon him much damage, as his evidence tended to show. The lands flooded did not adjoin the outlet, but were one-quarter of a mile away, up the lake shore in an opposite direction from the outlet. The defense was, that the legislature authorized the construction of the dam by chapter 658 of the Laws of 1886; also that they had a right to make the dam by virtue of chapter 234 of the Laws of 1855, entitled " An act to incorporate the Ontario Hydraulic Company of the county of Ontario." The defendants claimed to have succeeded to the rights of that company.

In the winter of 1888 it became necessary to construct a new bridge over the channel in the lake shore road, and the coffer-dam was constructed mainly for the purpose of keeping the waters out of the channel so that the new bridge could be more conveniently

constructed. A canal could have been dug by which the waters, which would otherwise flow through the channel, would be carried around the bridge and emptied into the feeder below, but it would have involved much expense. The defendants were the highway commissioners of the village of Canandaigua, and in that capacity were making these improvements for the village. The action was tried before a justice and jury in May, 1889. At the close of the evidence defendants' counsel asked the court to nonsuit the plaintiff. The plaintiff's counsel asked that the case be submitted to the jury on the evidence generally, and, also, " that it be submitted to the jury on the subject of negligence of the defendants in building the coffer-dam at the time they did build it, to wit, at an unseasonable period of the year, before the spring floods, and, also, upon the evidence as to there being a way whereby the waters could have been carried off without being kept back by this dam."

The court directed the jury to find a verdict for the defendant. The plaintiff's counsel excepted and the exceptions were ordered to be heard here.

The evidence, as a whole, tended to show that the erection of the coffer-dam kept water upon the plaintiff's farm during the agricultural season of 1888, to such an extent as to destroy the value of a large portion of it for pasturage or other purposes. Unless the defendants proved a right to so appropriate the plaintiff's lands, he has an undoubted remedy, and can recover all damages sustained. (*Pumpelly* v. *Green Bay Co.*, 13 Wall., 166 ; *Brown* v. *Bowen*, 30 N. Y., 537 ; *Radcliff's Executors* v. *Mayor of Brooklyn*, 4 id., 195; *Mahon* v. *N. Y. C. R. R.*, 24 id., 658 ; *Story* v. *New York Elevated R. R. Co.*, 90 id., 122 ; *Mahady* v. *Bushwick R. R. Co.*, 91 id., 148; *Cogswell* v. *N. Y., N. H. and H. R. R. Co.*, 103 id., 10.) *Scriver et al.* v. *Smith* (100 N. Y., 471), where the court held that the keeping of water upon land by means of a dam, to the extent it is flooded, amounts to an actual eviction.

It cannot be said that this appropriation of the plaintiff's property was casual and temporary. The value of a large portion of the plaintiff's farm was destroyed for a whole season. In the *Northern Transportation Company* v. *The City of Chicago* (99 U. S., 635), the defendant had erected a coffer-dam in the Chicago river to enable it to make a tunnel under the river along the line of

La Salle street.   During the making of the tunnel the plaintiff could not use its property for any beneficial purposes.   The court held, that the legislature may rightfully authorize the construction of railroads or other works of a public nature, without requiring compensation to be made to persons *whose property has not actually been taken* or appropriated for the use thereof, but who may, nevertheless, suffer indirect or consequential damages by the construction of such works.

It was held that the action could not be maintained, because there was no physical invasion of the property.   The decision comes within the principle that a man may do what he chooses upon his own land, in the exercise of legal rights, without being liable to an action by an adjoining owner in the absence of a physical invasion or actual taking.   In the case at bar the plaintiff's land was actually taken, so that the case above cited has no application.

In *Uline* v. *New York Central and Hudson River Railroad Company* (101 N. Y., 98), upon the authority of which the learned trial justice directed a verdict for the defendants, it was held that the rights of private owners in public highways must be obtained by compensation before a railroad could be constructed, but that when the right was acquired and it was built with proper care and skill the owners of the road are not responsible for damage to private property adjacent or near the road, *necessarily* resulting from its construction or operation.   It appeared in that case that the railroad had acquired, by paying compensation, the right to construct its road through the plaintiff's property in the highway, and that the balance of her land adjoined.   The complaint in this case alleged, in substance, that the defendant entered her property (meaning what she owned in the street), and tore up the pavement, raised the street, sidewalks and gutters, and so shaped the street and gutters as to pour the water therefrom down over the sidewalk into the basement of her houses, by means of which her premises were made liable to be flooded with water, and had been flooded with water and rendered damp, unhealthy, and inconvenient of access, and her property thereby had been injured, and the rental value and value thereof greatly depreciated.   The judge in delivering the opinion stated, in substance, that if the plaintiff did not receive compensation for her property the company would be liable; he also stated that

the damage sustained by the plaintiff *necessarily* resulted from the building and operation of the railroad. A large portion of the opinion is devoted to showing that an improper rule of damages had been adopted; but the court nowhere indicates an intention to question the authority of the cases above cited. The decision is based upon the proposition that a person whose land has been taken, if paid for, cannot recover for injuries inflicted upon the balance not taken, if they were the necessary results of the construction and operation of the road.

That case has no application to the one at bar. Here the land covered by water was one-fourth of a mile away. No compensation had been paid for it, it was not a part of any land taken or proximate to it, nor was it *necessary* to flood it, as the evidence tends to show. *Damnum absque injuria* cannot be invoked as a defense here. In *Arkell* v. *Commerce Insurance Company* (69 N. Y., 191), it was held that fifty feet from a building was not contiguous thereto. The expense would have been increased to avoid the flooding, but no case has been cited showing that an individual or corporation is justified in destroying a stranger's land for the purpose of reducing expense in the construction of lawful or commendable improvements. The rule adopted by the learned trial justice might destroy the value of private property without compensation. The dam was built before the coming of the spring floods for the purpose, as the plaintiff claims, of preventing an accumulation of water which would interfere with the construction of the bridge. The effect of such early building was to keep the water upon the plaintiff's premises, and secure profit to the defendants. The evidence required that the case should have been submitted to the jury.

A new trial should be granted, with costs to abide the event.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on verdict.