### HARTSHORN v. CHADDOCK.

*(Supreme Court, General Term, Fifth Department. October 23, 1891.)*

RIPARIAN RIGHTS—OBSTRUCTING STREAM—NUISANCE.

Defendant, the owner of land abutting on a non-navigable stream, constructed an embankment in front of his premises, and extending obliquely into the channel. The embankment did not obstruct the ordinary flow of water, but during an unusual freshet it caused the water to flow on plaintiff's land, on the opposite side of the stream. *Held*, that the embankment was a nuisance, and defendant was liable for the injuries caused by the water thus thrown on plaintiff's land.

Appeal from judgment on report of referee.

Action by Charles Hartshorn against Ransom N. Chaddock. Judgment for $866.25 damages, and $330 costs, was entered in Steuben county, on the report of a referee, and defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Hakes, Page & Acker,* for appellant. *Daniel L. Benton,* for respondent.

LEWIS, J. The referee found as facts that Canacedea creek is a non-navigable stream of water, flowing in a north-easterly direction, and in nearly a straight course, between Main and Genesee streets, in the city of Hornellsville, N. Y., and was so May 31, 1889, except as obstructed and dammed by the defendant's piling in the rear of his lot; that the plaintiff was the owner .n fee, on May 31, 1889, of a lot of land lying upon the southerly side and adjacent to said creek, opposite the land of the defendant; that the average width of the channel of the creek was originally about 140 feet, with low and sloping banks between Main and West Genesee streets, and that in time of ordinary high water or freshets the waters of the creek were accustomed to overflow the banks thereof, and to cover the land generally north of the stream or adjacent to its left bank, some 100 feet from its present location and channel, and that at such times there was some overflow of the lands of the plaintiff; that the bed of the stream between the streets mentioned had been from time to time changed to the south by the filling in of the land upon the northerly side thereof; that the plaintiff and his grantors had driven piles along the bank of the creek adjacent to his lands, opposite and above and below the defendant's lands, and covered the same with plank, and raised the bank along the creek on his lands, to protect the same, and prevent the stream from further encroaching upon and washing away his land; that such planking did not impede, obstruct, or hinder the flow of the water in the creek as it was originally accustomed to flow; that during the summer of 1888 the defendant drove, and caused to be driven, on the north-westerly side of the creek, and opposite the plaintiff's land, a number of piles, and caused and procured others to be driven along the bank of the creek above and below his premises, extending and projecting south-easterly into the channel of the creek a distance of from 23 to 30 feet, the same being slightly curved, and that the piles were higher above the ground than the plaintiff's land on the opposite bank; they were sheeted with plank from the bottom to the top of the piles, and that he filled in in the rear of the embankment with dirt, stone, and rubbish nearly to the height of the planking, and so constructed it as to prevent the flowing of the water of the creek through the obstruction, and formed by the piling and embankment a solid dam or obstruction extending into the channel of the creek as it then flowed, and obstructing the flow of the water for nearly one-third of its width as it existed before the embankment was

constructed, and narrowed the channel at least 20 feet more than the average width of the stream at the points above and below the obstruction of the defendant, between Main and West Genesee streets; that the obstruction was maintained until the 1st of June, 1889; that it was an illegal obstruction to the flow of water in the creek in times of high water or freshets, and dangerous to lands on the opposite bank of the stream; that on and previous to the 31st of May, 1889, the plaintiff was the owner of the land opposite such piling and obstruction on the southerly bank of the creek, and extending down the stream south-easterly below the same; that on the lands of the plaintiff was stored and located a large amount of personal property, consisting of wood, lumber, shingles, wagon, and other property belonging to the plaintiff; that on the night of May 31, 1889, and morning of June 1st, there was a long, heavy rain, and the water of the creek was raised several feet in height, and was largely increased in volume and velocity; that during such rise and freshet the waters were dammed and obstructed by defendant's piling, and displaced and forced to the southerly bank upon the lands of the plaintiff, and against the plaintiff's piling, breaking down the piling and embankment of the plaintiff, overflowing his land opposite to and below the defendant's obstruction, and injuring and destroying said personal property; that defendant's obstruction prevented the water from passing down the stream as it would had the planking and embankment not been placed there; that 1,600 yards of the earth on plaintiff's lot were thereby washed away, and he suffered damages in all to the amount of $866.25; that the freshet was not usual or frequent in the creek, but was of the kind or volume of water and velocity of current that has periodically occurred in the past, and is liable to occur in the future, from heavy rains or melting snows, and that when such freshets occur the waters must be forced out of the channel over upon the lands of the plaintiff by the obstruction so constructed by the defendant. He found as a conclusion of law that the plaintiff was entitled to judgment against the defendant for the sum of $866.25, with costs. There was evidence tending to show that while the defendant was engaged in constructing the embankment he was remonstrated with, and admonished of the probable consequences which followed. While the proof shows that others had also encroached upon the bed of the stream by driving piles on the northerly side, there would have been left a space of 90 feet in width, which would have been sufficient to pass the waters of the stream, had it not been for the obstruction constructed by the defendant. ·

We think the referee's findings of fact and law are sustained by the evidence. The plaintiff, as owner of lands upon the creek, was entitled to have the waters of the stream pass along without unnecessary obstruction. The appellant contends that the freshet was of such an unusual character that his client should not be held responsible, as such a freshet could not have been expected to occur. The cases referred to by appellant's counsel to sustain this doctrine have no application here. If his piling had been rightfully placed where it was, the question would then have been presented whether he had used reasonable care in its construction. But the doctrine invoked by the appellant does not apply where the obstruction is a nuisance, and unlawful, as in this case. He had no right to create a nuisance, and speculate as to the probable consequences of his act. *Salisbury* v. *Herchenroder*, 106 Mass. 458, and the cases there referred to. The evidence, moreover, tends to show that the creek had been as high on several other occasions, and that such freshets were likely to occur. The appellant contends that the embankment of the owners of land adjoining the defendant's contributed to the damage sustained by the plaintiff, and that it was error to find that the defendant was responsible for the entire damages. The difficulty with this contention is that the evidence tended to show, and the referee has found, that the embankment of the defendant was the sole cause of the injury to the plain-

tiff's property. Had his embankment been on a line with the embankments above and below him, the referee finds that the waters would have passed along, and not injured plaintiff's property. The water carried away 1,600 cubic yards of earth from the plaintiff's lot. The proof shows that it would cost from 20 to 25 cents a yard to replace it. It was a city lot prepared and used by the plaintiff as a wood and lumber yard. It required refilling, in order to be available. The cost of refilling it was a proper item of damages. It was not like the case of loss of soil on agricultural lands, where replacing the soil would cost more than the land would be worth when filled. In such a case the damages would be the difference in the value of the land before and after the injury. The brush and stone the plaintiff caused to be placed against his piling upon the southerly side of the creek did not obstruct the flow of the stream; so the referee finds. We find no errors in the admission or rejection of evidence, and there does not appear to be any reason for the reversal of the judgment. The judgment should be affirmed, with costs of the appeal. All concur.