WILLIAM H. ORDWAY, RESPONDENT, *v.* THE VILLAGE OF CANISTEO, APPELLANT.

*Municipal corporation — liability of, to a riparian neighbor for damages resulting from the diversion of a stream.*

A municipal corporation is not, by the mere fact of its being such a corporation, exempt from the rule that, irrespective of any question of negligence or malice, a riparian owner, who, by a willful act, diverts the waters of a natural stream from its accustomed channel and causes them to flow upon the lands of a neighbor, is liable for the resulting damage.

Nor is a municipal corporation exempt from such liability by reason, merely, of the fact that the acts on its part complained of were done in the supposed exercise of its authority conferred by law to protect the public and private property within its corporate limits from damage by floods, where the infringement of the right of its riparian neighbor to have the stream continue to flow in its natural channel, direction and volume, as it had been accustomed to flow, is direct and immediate, and the damage complained of was certain to result from such infringement in a time of flood, and is permanent in its character.

When, in such a case, the riparian neighbor's land is rendered practically worthless by reason of the diversion of the stream from its natural channel, the value of such land per acre previous to the diversion is a proper measure of damages.

APPEAL by the defendant, the Village of Canisteo, from a judgment of the Supreme Court for $849.32, damages and costs, entered in the office of the clerk of Steuben county on the 2d day of December, 1891, in favor of the plaintiff William H. Ordway, on the report of a referee.

The action was brought to recover damages to the plaintiff's lands and farm, caused by the defendant's acts in casting waters, gravel, etc., upon the farm, and otherwise cutting, injuring and destroying the same through diverting the waters of a stream, known as Bennett's creek, from its natural channel.

*Eli Cowe*, fo⋅ the appellant.

*F H. Robinson*, for the respondent.

DWIGHT, P. J.:

The farm of the plaintiff adjoineu the territory of the defendant on the east, and Bennett's creek formed the boundary of the latter on the south-east and south, and then flowed easterly through the former. It was a non-navigable stream, subject to high and sudden freshets in times of heavy rains or melting snows, and at such times overflowed its banks at the points where they were lowest. In its normal state it flowed in a natural channel and between fairly well defined banks. In its flow past the village it made a bend nearly at a right angle around the point of a hill on the opposite side, and, as was natural, its waters, in the course of years, impinging upon the left bank at the apex of the bend had caused the bank at that point to recede, and widened the bend of the creek to nearly twice its width a short distance above. At this point, also, which was about eighty-five rods above the west line of the plaintiff's farm, there had been, as the referee finds, for more than thirty years, a natural depression in said left bank, extending down the creek for a distance of from twenty to twenty-five rods, over and through which depression the waters of the creek had, for all that time, been accustomed to flow in times of freshets in no particular course or defined channel, but northerly to the village and through its streets doing more or less injury to the walks, streets and property of the village.

About the 1st of June, 1889, there was an extraordinary rise in the waters of the creek, from heavy and protracted rains, causing

a general overflow of its banks, particularly at the line of depression above mentioned, so that the waters flowed through the streets of the village and did much damage therein. At that time the water also overflowed portions of the plaintiff's farm, lying north of and next to the creek, but, as the referee finds, did not cut or wash those lands and did little or no damage thereto, but rather, apparently, improved and enriched them by the deposit of soil and sediment from the water coming thereon.

In the fall, and previous to November first of the same year (1889), the defendant constructed a line of piling, planked on the side toward the stream, conforming generally to the course of the left or northerly bank of the creek, but at such distance therefrom, toward the center of the channel, as to narrow the stream by about one-third of its width for a distance of about forty-five rods, including its widest part, in the bend of the stream and opposite the depression in its north bank above mentioned. At the widest point in the bend the structure of piling and planking was placed in the stream at a distance of more than one hundred feet from the north bank.

This distance was gradually diminished as the stream grew nar_ rower, until the structure was abruptly terminated at a distance of about one hundred and fifty feet west from the plaintiff's west line.

At about the same time, and previous to November, 1889, the defendant plowed up and loosened large bars of gravel which had formed years before in the bed of the stream, south of where the planking was placed, and left the gravel loose to be washed out and carried down the stream by subsequent floods, with the purpose of forming a new channel for the stream.

Throughout some portion of the structure thus erected in the bed of the stream, especially in the bend and in front of the depression in the bank above described, the piling and planking was made considerably higher than the natural banks, while as the structure approached the line of the plaintiff's land it was cut down to, or lower than the height of the natural bank.

In the month of November, 1889, and again in May, 1890, freshets occurred in Bennett's creek, during which, as the referee finds in substance, the waters were turned from their natural currents, piled up and confined by the structure above described, prevented from escaping at the points above the plaintiff's land where they had been

accustomed to overflow, accelerated in their current by the smooth surface of the planking, and, so changed in direction and increased in volume and velocity, were cast upon the plaintiff's farm, cutting away his banks, flowing with a swift current over his land, cutting holes and channels therein, carrying away the soil, and depositing banks of gravel thereon. The referee finds that three acres of the plaintiff's land was thus rendered practically worthless, estimates the previous value of the land at $150 an acre, and makes that estimate the measure of the damages to be awarded to the plaintiff.

There can be no question but that if the defendant had been a private person who had sought thus to protect his own land at the expense of his adjoining riparian proprietor, he would have been liable for all the injury caused to the latter by reason of such acts on his part. The case would have been directly amenable to the maxim *sic utere tuo ut non,' etc.* It would have been, in its essen-. tial features, identical with the case of *Hartshorn* v. *Chaddock* (lately considered in this court and the Court of Appeals, 40 N. Y. St. Rep., 953; 47 id., 838.) It is unnecessary to do more than refer to the opinions in the two courts in that case, and to the authorities cited therein, to sustain the general proposition stated by Judge O'BRIEN in the latter opinion, that, "irrespective of any question of negligence or malice, a riparian owner who, by his willful act, diverts the water of a natural stream from its accustomed channel and causes them to flow upon the lands of his neighbor, is liable for the resulting damage." (Citing *McKee* v. *D. and H. C. Co.*, 125 N. Y., 353.)

The same decision in both courts is also authority in favor of the rule of the measure of damages adopted by the referee in this case.

The only question remaining seems, therefore, to be, whether the municipal character of the defendant, and the fact that the acts on its part complained of, were done in the supposed exercise of its authority, conferred by law, to protect the public and private property within its corporate limits from damage by floods, takes the case out of the rule above stated.

It seems to us very clear that this case, upon its facts, is no exception to the general rule. It is clearly not within the principle of the cases of *Radcliff's Executors* v. *The Mayor* (4 N. Y., 200); *Ely* v. *Rochester* (26 Barb., 133), and *Atwater* v. *Canandaigua* (56 Hun,

293; S. C. on appeal, 124 N. Y., 608). In these cases the work authorized or directed by law was special in its character, and required to be done in a particular place, and within very narrow limits of discretion, in a particular manner, and the resulting damage was temporary and purely consequential. In this case the infringement of the plaintiff's right, viz., to have the stream which flowed through his land continue to flow in its natural channel, direction and volume as it had been accustomed to flow, was direct and immediate, and the damage complained of was certain to result therefrom in a time of flood, and was permanent in its character. The case is clearly rather within the principles recognized in *Noonan* v. *City of Albany* (79 N. Y., 470); *Seifert* v. *City of Brooklyn* (101 id., 136); *Byrnes* v. *City of Cohoes* (67 id., 204); *New York Central and Hudson River Railroad Company* v. *City of Rochester* (127 id., 591); *Gould* v. *Same* (105 id., 46).

Granting to the defendant full authority to take such action as might be necessary and proper to protect its property and that of its inhabitants from the floods — yet even here the principle applies that it is bound so to use its own as not to injure another's — so to protect its own that the loss and damage which it averts from itself is not cast upon another.

There is, in truth, no principle upon which a municipal corporation can claim immunity from such liability as would attach to an individual for acts in disregard of the rights of others such as are portrayed in this case.

We find no error in the trial of the action, or in its determination, which should vitiate the judgment.

The judgment should be affirmed

Macomber and Lewis, JJ., concurred.

Judgment appealed from affirmed.