## CAIRO, V. & C. RY. CO. v. BREVOORT.

(Circuit Court, D. Indiana. June, 9, 1894.)

No. 8,993.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—RIPARIAN RIGHTS.
   The right of an owner of land on one side of a navigable river, which forms the boundary between two states, to make a new bank for the river, or, by artificial structures, to turn the waters upon land on the opposite side of the river, is not a local question, but one depending for determination on the general principles of the law, on which decisions of the state courts are not binding on the federal courts.

2. SURFACE WATER—RIGHTS OF LANDOWNER.
   The superabundant waters of a river, at times of ordinary floods, spreading beyond its banks, but forming one body and flowing within their accustomed boundaries in such floods, are not surface waters which a riparian owner may turn off as he will.

3. EMINENT DOMAIN—RIGHTS OF LANDOWNER
   A riparian proprietor who has conveyed to a railway company all the right, title, and estate in a strip of his land which could have been acquired by condemnation thereof for a right of way, has no right to construct along the river bank, over such right of way, a levee which will raise the water flowing in the stream at times of ordinary floods so as to endanger the bridge and other structures of the railway, and will also throw such water upon lands on the opposite side of the river, thereby subjecting the railway company to suits for damages.

This was a suit by the Cairo, Vincennes & Chicago Railway Company against Brevoort, to restrain the construction of a levee along the bank of the Wabash river across complainant's right of way. Defendant demurred to the bill.

C. S. Conger and Elliott & Elliott, for complainant.
Reily & Emison, for defendant.

BAKER, District Judge. The questions for decision arise upon a demurrer to the bill of complaint. The grounds of demurrer are that the bill of complaint does not state facts entitling the complainant to any equitable relief. The facts stated are that the complainant has constructed, owns, and operates a line of railway along the bank of the Wabash river, in the state of Illinois, opposite to a tract of land owned and occupied by the defendant, which is situated in Knox county, in the state of Indiana; that the complainant is a corporation organized under the laws of the state of Illinois, and is a citizen of that state; that it owns and operates a branch or short line of railroad which crosses the Wabash river from the Illinois side, and extends thence over lands in Knox county, Ind., to the city of Vincennes, in said county; that the branch line of railway is constructed upon and across the lands of defendant, where the railway crosses the Wabash river into Knox county, Ind.; that on the Indiana side, where said railway is constructed from the Indiana bank of the river for a short distance, the branch railway is built upon trestlework, in such manner that the water overflowing the Indiana side of the river, in times of floods, passes through the trestlework; that the defendant has built a levee on his lands upon and along the banks of the river, on the Indiana

side, near to said trestlework, and intends and threatens to continue said levee upon and across the complainant's right of way, and to join the same to the embankment and end of said trestle, where the same unites with an embankment or filling of solid earthwork, upon which the railway is constructed. It is further averred that the complainant has constructed its railway across the river upon a bridge with a sufficient opening on both sides of the river to suffer and permit the water accumulating in times of floods to pass, without material obstruction, through and under said bridge and trestlework; that a part of the plan, in constructing the bridge, was to leave open trestlework on the Indiana side of the river for the passage of flood water; and that, if the defendant shall complete his proposed levee, it will hold the flood water, when the river is high, within so narrow a channel that it will thereby become higher than it otherwise would, and would endanger the bridge, trestlework, and embankments of the railway, as well as the tracks and superstructure erected thereon, and would cause the right of way and other large bodies of land on the Illinois side of the river to be overflowed, subjecting the complainant to many suits by the owners of such lands for damages. The bill further avers that the complainant has been in the undisturbed possession and use of its right of way, as it now exists, and did exist at and before the time when the defendant began to construct his levee, for over 20 years; that it obtained the same by deed from the owner of the land, from whom the defendant long afterwards acquired his title. It is further averred that the complainant owns a right of way, 200 feet in width, over and across the defendant's land, held by a deed conveying all the right and privileges incident thereto, it being the purpose of the grantors in said deed to grant to said company such exclusive interest and estate in said strip of land (and no other interest or estate) as said company would acquire therein, were the same condemned to the use of said railroad by regular proceedings under the statutes of the state in that behalf made and provided.

In support of the demurrer, counsel for the defendant contend that the riparian proprietor may lawfully protect his property from floods by erecting a dike or levee on the bank of a stream, though its necessary effect may be to turn its superabundant waters on the land of his neighbor; that the waters of a stream, when swollen beyond its banks by ordinary and habitually recurring floods, are in the nature of surface water; and that such waters are a common enemy, which such proprietor may fight off as he will. And it is further contended that the complainant, by its deed of conveyance, has acquired only an easement of way, and that the defendant retains the paramount title, and may lawfully erect his levee thereon, doing no unnecessary injury to the complainant. Cases are cited from the supreme court of this state, which, it is claimed, support these contentions. These cases, if of the character claimed, would be authoritative expositions of the law for the control and guidance of the courts of the state in regard to what constitutes surface water; but they would not be binding on the federal courts, unless the question is one of local law. The right of an

adjoining landowner to make a new bank for a navigable river which forms the boundary between two states, or, by artificial structures, to turn the waters onto lands on the opposite side of the river, is not a local question, but one depending for its determination upon the general principles of the law. The Wabash river, as the court judicially knows, and as the bill avers, is a navigable stream and public highway, upon which interstate commerce is carried; and, this being so, it must follow that questions relating to the channel and banks of the river are in no just sense local in their nature. It is firmly settled that the decisions of the state courts are not controlling, and ought not to be followed, upon questions of general law, where such decisions are found to be at variance with the general principles of the law. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, and cases there cited. The Indiana cases cited and relied on, in my judgment, have settled the law for this state that the superabundant water of a stream which, at times of ordinary floods, spreads out, and overflows its banks and channel, is to be deemed surface water, and, as such, that each proprietor may fight it off as he will, without liability to any one for damages occasioned thereby. Taylor v. Fickas, 64 Ind. 167, was an action by an upper riparian proprietor against a lower one to recover damages for obstructing and throwing back the waters of the Ohio river, which, having been swollen by rains, had overflowed its banks. It was alleged that:

"During times of high water and overflow, the water from the said river runs over the said tracts of land with a strong and rapid current,—the general current of the same running from east to west, first over the land of the plaintiff, and then over that of the defendant; the water in said current over said land varying in depth from two to ten feet,—and that the water (which is in fact a portion of the said river) has run in that manner, during seasons of high water, and during times of overflow, from time immemorial."

It was held that these waters were in the nature of surface water, and that the lower proprietor might lawfully fight them off as he saw fit, without regard to the damages caused thereby to the upper proprietor. The court say:

"In the complaint before us, there is no averment of any water course, except, indeed, by way of parenthesis, that the place, during floods, is a part of the Ohio river. But the facts averred clearly show that it is not upon the bed of the river, nor within its channel, nor between its banks; in short, that it is no part of a water course, but that the flow is over the entire surface of the land, is occasioned by temporary causes, and is not usually there. The rights of the appellee, therefore, are such as a proprietor may have in surface water, which, as we have seen, is a part of his land; and the injuries or inconveniences which the appellant is alleged to have suffered are such as arise from the changes, accidents, and vicissitudes of natural causes."

In the case of Railroad Co. v. Stevens, 73 Ind. 278, the question arose upon a complaint charging that the defendant "negligently and unskillfully built and constructed an embankment, and failed, negligently and carelessly, in the construction of the embankment, to make any culvert," and that "by reason thereof the water coming upon the land of the plaintiff, and flowing thereon from the river and from the surrounding lands, has been stopped and hindered by said embankment from flowing under said embankment."

In deciding the case, the court, upon the authority of Taylor v. Fickas, supra, assumed that the water which injured the plaintiff was surface water, but did not enter into a consideration of the question whether the water of a swollen stream would be regarded surface water. The court say:

"With reasonably near approximation to accuracy, it may be laid down as a general rule that, upon the boundaries of his own land,—not interfering with any natural or prescriptive water course,—the owner may erect such barriers as he may deem necessary to keep off surface water or overflowing water, from or across adjacent lands; and for any consequent repulsion, turning aside, or heaping up of these waters, to the injury of other lands, he will not be responsible."

In the case of Turnpike Co. v. Green, 99 Ind. 205, it is held that a riparian proprietor may, by levees on his own land, protect it from overflow by floods,—not, however, obstructing the channel of the stream; and for this purpose he may build a levee over the graveled way of a turnpike company having an easement upon his land,—not materially injuring the use of the way,—even though his levee causes a greater overflow of water upon the land of others, and upon the turnpike.

In the case of Jean v. Pennsylvania Co. (Ind. App.) 36 N. E. 159, it is held that the overflow caused by a river spreading beyond its banks in time of high water must be regarded, and may be treated, as surface water. The same principle has been recognized in the following cases: Weis v. City of Madison, 75 Ind. 241; Benthall v. Seifert, 77 Ind. 302; Railroad Co. v. Houry, Id. 364; Hill v. Railroad Co., 109 Ind. 511, 10 N. E. 410; Weddell v. Hapner, 124 Ind. 315, 24 N. E. 368; Barnard v. Shirley (Ind. Sup.) 34 N. E. 600.

It is insisted—and, I think, with justice—that the opinion in Taylor v. Fickas, supra, upon which all subsequent Indiana cases rest, is based on an unfounded assumption. The court assumed—what is not true, in law or physics—that the water of the Ohio river, in times of ordinary floods, is surface water. The cases cited lend no just support to the assumption on which the opinion rests. It is settled law here, as well as elsewhere,—settled beyond serious debate,—that a railroad company, in bridging a stream, must provide a water way for the passage of the water which flows into and down the stream in times of ordinary floods, but it is not bound to provide outlets for surface water. If the water of the Wabash river, in times of ordinary floods, is surface water, a railway company would be under no obligation to provide an outlet for its superabundant water at such times; and the ultimate result would be that all the company need do is to provide outlets sufficient to pass the water which flows in the channel, and within its banks. Such, however, is not the measure of its duty. Either the cases which hold that a railroad company, in bridging a stream, must provide a sufficient water way for the passage of the superabundant water which flows into and down the stream in times of ordinary floods, are unsound, or else the doctrine of Taylor v. Fickas, supra, and of the cases which follow it, cannot be upheld.

In the decision of the case before me, it is not necessary to repudiate the doctrine of Taylor v. Fickas, supra, and of the other

cases which follow it, because there is an essential difference between the facts in the present case and the facts in the cases hereinbefore cited and criticised. In those cases the embankments or obstructions complained of did not run upon and along the bank of the stream, but they were placed at right angles thereto, while here the levee runs upon the bank, and parallel with the river. In this case the riparian owner proposes to change the bank by erecting an artificial upon the natural bank. There is also a plain difference between the backing up of flood waters on one side of the stream, and a change of the bank so made as necessarily to cast the water which flows in the stream at times of ordinary floods upon the proprietors of lands on the opposite side of the river. No Indiana case has been cited, and none is believed to exist, holding that a riparian proprietor has the right to erect a new bank along the margin of a stream, the necessary effect of which is to cast its superabundant waters, in times of ordinary floods, upon the lands of the opposite riparian proprietor, without responsibility for the proximate damages occasioned by such new bank. The flow of a river, when swollen beyond the low-water mark of the dry seasons by the ordinary rains which fall in wet seasons, or by the melting of snows, does not constitute surface water. The waters of a natural stream are not surface water, in any just sense, and the waters of a stream are those which are cast into it by rainfalls and melting snows. Ordinary rainfalls are such as are not unprecedented and extraordinary; and hence floods and freshets which habitually recur, though at irregular and infrequent intervals, are not extraordinary or unprecedented. It has been well said that "freshets are regarded as ordinary which are well known to occur in the stream occasionally through a period of years, though at no regular intervals." Gould, Waters, § 211c. The waters cast into a stream by ordinary floods must have a channel in which they are accustomed to flow, and, if they have, that channel is a natural water course, with which no riparian proprietor can lawfully interfere to the injury of another. If there is a natural water way or course, and its existence is necessary to carry off the water cast into the stream by ordinary floods, that way is the flood channel of the stream: and, if it is the flood channel of the stream, the water which flows there cannot be regarded as surface water. Surface water is that which is diffused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow. Surface water ceases to be such when it enters a water course in which it is accustomed to flow; for, having entered the stream, it becomes a part of it, and loses its original character. "A stream," says Gould, "does not cease to be a water course, and become mere surface water, because, at a certain point, it spreads over a level meadow, and flows for a distance without defined banks, before flowing again in a definite channel." Gould, Waters, § 264. It must necessarily follow from this general principle that where water naturally flows, though the volume may change with the varying seasons, there is a natural water course,

even though at times the place where the water flows in ordinary floods may become entirely dry. It can make no difference that the boundaries within which the water flows change with varying seasons, for the way which nature has provided for its flow is the stream, and water flowing in that water way is not surface water. As is well said in Crawford v. Rambo, 44 Ohio St. 279, 7 N. E. 429:

"It is difficult to see upon what principle the flood waters of a river can be likened to surface water. When it is said that a river is out of its banks, no more is implied than that its volume then exceeds what it ordinarily is. Whether high or low, the entire volume at any one time constitutes the water of the river at such time, and the land over which it flows must be regarded as its channel. So that, when, swollen by rains and melting snows, it extends and flows over the bottoms along its course, that is its flood channel; and when, by drought, it is reduced to its minimum, that is its low-water channel."

Lord Tenterden, with whom originated the expression that "surface water is a common enemy," held, in Rex v. Trafford, 1 Barn. & Adol. 874, that the water of a stream was not surface water, and declared that the doctrine announced in Rex v. Commissioners of Sewers, 8 Barn. & C. 355 (the case in which he used the above expression), had no application to the waters of a natural stream. In the course of his opinion, he observes:

"It has long been established that the ordinary course of water cannot be lawfully changed or obstructed for the benefit of one class of persons to the injury of another. Unless, therefore, a sound distinction can be made in the ordinary course of water flowing in a bounded channel at all seasons of the year, and the extraordinary cause which its superabundant quantity has been accustomed to take at particular seasons, the creation and continuance of these feeders cannot be justified. No case has been cited or has been found that will support such a distinction."

In the case of O'Connell v. Railroad Co., 13 S. E. 489, the supreme court of Georgia states the question before it thus:

"The precise question in this case is whether the owner of land on the bank of a river can, without liability, erect on his own land an embankment which increases the overflow, in times of flood, upon the lands of the opposite proprietor, to the injury thereof."

After a full and careful consideration of the question it was held that there was no such right. In the course of the opinion the court observed:

"The surplus waters do not cease to be a part of the river when they spread over the adjacent low grounds, without well-defined banks or channels, so long as they form with it one body of water, eventually to be discharged through the proper channel."

In Menzies v. Breadalbane, 3 Bligh (N. S.) 414, the court say:

"It is clear, beyond the possibility of doubt, that, by the law of England, such an operation cannot be carried on. The old course of the flood stream being along certain lands, it is not competent for the proprietors of those lands to obstruct that course by a sort of new water way, to the prejudice of the proprietor on the other side."

In Burwell v. Hobson, 12 Grat. 322, it is holden that the water of a stream, when swollen by ordinary floods, is not surface water. Speaking of the concession of counsel that the general rule is that the flow of a stream cannot be lawfully obstructed, and the denial of its application to the case before it, the court said:

"But he contended that it is confined in its application to the ordinary course of the stream, and that a riparian proprietor may lawfully protect his property from floods by erecting a dike or other obstruction, though its necessary effect may be to turn the superabundant water on the land of his neighbor. Such a distinction between the ordinary and extraordinary flow of a stream is not laid down or recognized by any elementary writer, or in any adjudged case, so far as I have seen. The utmost extent to which the authorities go in that direction is that a riparian proprietor may erect any work in order to prevent his land being overflowed by any change in the natural flow of the stream, and to prevent its old course from being altered. Ang. Water Courses, § 333. But he has no right to build anything which, in times of ordinary flood, will throw the waters on the grounds of another proprietor, so as to overflow and injure them. If, in the case of such an obstruction, it appears that the injury arose from causes which might have been foreseen, such as ordinary freshets, he is liable for the damage. Id. § 349. That the supposed distinction does not exist was expressly decided in Rex v. Trafford, 1 Barn. & Adol. 874."

The same principle is recognized or expressly decided in the following cases: Jones v. Hannovan, 55 Mo. 462; Wharton v. Stevens, 84 Iowa, 107, 50 N. W. 562; Gerrish v. Clough, 48 N. H. 9; Hartshorn v. Chaddock, 135 N. Y. 116, 31 N. E. 997; Byrne v. Railway Co., 38 Minn. 212, 36 N. W. 339; Wallace v. Drew, 59 Barb. 413; Ordway v. Village of Canisteo, 66 Hun, 569, 21 N. Y. Supp. 835; Carriger v. Railroad Co., 7 Lea, 388; West v. Taylor, 16 Or. 165, 13 Pac. 665.

With reasonably near approximation to accuracy, it may be laid down as a general rule that all the waters of a river, which form one body, when flowing within the boundaries within which they have been immemorially accustomed to flow, in times of ordinary floods, constitute waters of the river, and are not surface waters.

The complainant owns a right of way over and across the lands of the defendant, 200 feet in width. Its title thereto was acquired by a deed of conveyance from the same party from whom the defendant subsequently acquired his title. The deed conveyed to the complainant all the right, title, and estate which could have been acquired under condemnation proceedings under the statute of the state in that case made and provided. The complainant acquired an easement in the land, whose nature and extent are such as is necessary for the purpose of maintaining and operating its railway. The estate of the complainant is the dominant, and that of the defendant the servient. Davidson v. Nicholson, 59 Ind. 411; Robinson v. Thrailkill, 110 Ind. 117, 10 N. E. 647. The grant of an easement conveys all such incidental rights as are necessary to the enjoyment of the thing granted. The use to which an easement is devoted, or for which it is created, determines its character; and, to the extent that the use is necessary to carry out the purpose of the grant, the rights of the owner of the easement are paramount. An easement granted to a railway is essentially different from any other. The nature of railway service requires exclusive occupancy. A railroad company is held to the highest degree of care, and the exercise of this care necessarily requires that it should have complete dominion over its right of way. It is bound to prevent obstructions from being placed on its tracks, and is required to keep them fenced in, and free from rubbish or

other combustible materials. The duties of a railway company, are due to the public as well as to individuals, and these duties it must perform at its peril. The rules which apply to the use of streets or highways fail, when applied to railroads, because. the necessities of their use are different. The railroad must have the exclusive possession and control of the land within the lines of its location, and the right to remove everything placed or growing thereon, which it may deem necessary to remove to insure the safe management of its road. Hayden v. Skillings (Me.) 6 Atl. 830; Brainard v. Clapp, 10 Cush. 10; Hazen v. Railroad Co., 2 Gray, 577; Locks & Canals v. Nashua & L. R. Co., 104 Mass. 11; Jackson v. Railroad Co., 25 Vt. 150; Railroad Co. v. Holton, 32 Vt. 43; Atlantic & P. Tel. Co. v. Chicago, R. I. & P. Co., 6 Biss. 158, Fed. Cas. No. 632. The construction of the levee as proposed would be a plain invasion of the complainant's exclusive rights. It follows from the foregoing considerations that the demurrer must be over-ruled, and it is so ordered.