MERLE ZIDEL, Individually and as Executor of ISAAC ZIDEL, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27996.)

Court of Claims, September 30, 1949.

*Michael D. Lombardo, Clarence G. Picard* and *Ross A. Spoto* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LAMBIASE, J.   Claimant has filed this claim " for trespass by the State of New York and for negligence upon the part of the State of New York and for the maintenance of a nuisance in constructing a stone fill and depositing alongside of the Jamestown-Frewsburg Highway stones and concrete slabs and other material in connection with the construction of the Jamestown-Frewsburg Highway, S.H. 940, under R.C. 3901, in consequence of which the bed and course of the Stillwater Creek was deflected and altered to the damage of the claimant's lands  *  *  *." (Claim, par. 2, in part.)

Claimant's lands consist of approximately 2.54 plus acres in the town of Kiantone, New York.  Ownership thereof has been in the Zidel family since 1930.  When the property was acquired in 1930, there was a house and several other small structures on the premises.  In that year, however, there was constructed thereon a slaughterhouse.  Various additions to the buildings were erected from time to time, the last one having been built in the summer of 1945, and the one nearest to the creek having been built in 1939.  Stillwater Creek is immediately east of the claimant's lands, and east of the creek is the Jamestown-Frewsburg State highway.

As originally constructed by the town or county, the above-mentioned highway was supported on its west side, that is the side toward Stillwater Creek, by two retaining walls of logs supported by iron piles. The first one was in the vicinity of the curve where the creek first meets the highway to the north of claimant's property and extended a distance of 152 feet. Then there was no wall for a distance of 238 feet, but opposite claimant's property there was another wall of similar construction, 65 feet in length. These walls remained until the State of New York first constructed this highway between the years of 1911 and 1914 when a concrete retaining wall was constructed along its west side from a point north of claimant's property where there is a curve in the creek, and extending southerly nearly to the so-called Peck Settlement Road which is south of claimant's property. This wall concededly was built to support the highway. Thereafter and in 1938 the State of New York reconstructed said highway, and, pursuant to the reconstruction plans, large concrete slabs and stones were then dumped into the bed of the creek at the base of and in the vicinity of the concrete wall to prevent erosion of the land beneath said wall. From 1938 down to the filing of the claim herein, these concrete slabs and stones, which have been designated as stone " fill " or " rip-rap ", began at the north end of the concrete wall and continued southerly down to the north boundary line of claimant's property, being in all 150 to 200 feet in length. This rip-rap was wider at some points than at others and projected out into the stream about ten feet at its greatest width. When originally put in some of this stone fill or rip-rap was also placed opposite claimant's property, but most of it was later removed therefrom upon claimant's complaint.

The composition of the west bank of Stillwater Creek in front of claimant's property is mostly gravel with some loam dirt and with some clay deeper down in the bank. That there have been changes in this bank from time to time caused by erosion and by accretion cannot be successfully contradicted, although an issue has been made herein as to the extent and as to the time of the happening thereof. An addition was built to the existing slaughterhouse about the year 1939, which slaughterhouse and addition were in existence in 1945; and State's Exhibit G establishes that in 1911 the top of said bank was located at a point where in 1945 there was located the northeast corner of said structure. Said exhibit indicates also that in 1939 there was land to the extent of twenty feet between the northeast corner of the slaughterhouse constructed that year and the top of the west

bank. Then, too, there is proof that between 1933 and 1938 five feet of land were eroded from said west bank in front of claimant's property and that from 1938 up to the filing of the claim herein in December, 1945 there was an erosion of about an additional sixteen feet which brought the top of said bank to about three and one half feet east of the northeast corner of the slaughterhouse.

In the fall of 1945 and prior to the filing of the claim herein, in order to protect his lands and buildings from the erosive effects of the stream, claimant caused a temporary wooden retaining wall to be erected in front of his property and along the west bank of said creek in line with the bank line as it had existed in 1939 and filled in with dirt behind it to the point eroded. It had been his intention at that time to build a permanent retaining wall of steel reinforced concrete but he was unable to do so because steel was unobtainable and because he had not sufficient funds then with which to build it; and at the time of the trial the temporary wall was still there.

Stillwater Creek, at all times in the claim mentioned, was a natural water course or stream flowing in a defined bed or channel with banks and sides having permanent sources of supply. It did not lose its character as such because its flow was not uniform and not uninterrupted, or because in times of drouth its flow was diminished or temporarily suspended, since it was usually a stream of running water. (*Barkley* v. *Wilcox*, 86 N. Y. 140.)

" The owners of land on a water-course, are not owners of the water which flows in it. But each owner is entitled by virtue of his ownership of the soil, to the reasonable use of the water as it passes his premises, for domestic and other uses, not inconsistent with a like reasonable use of the stream, by owners above and below him. Such use is incident to his right of property in the soil. But he cannot divert, or unreasonably obstruct the passage of the water, to the injury of other proprietors. These familiar principles, are founded upon the most obvious dictates of natural justice, and public policy." (*Barkley* v. *Wilcox, supra*, pp. 146-147; *Pixley* v. *Clark*, 35 N. Y. 520; *Hartshorn* v. *Chaddock*, 135 N. Y. 116; *United Paper Board Co.* v. *Iroquois Pulp & Paper Co.*, 226 N. Y. 38; *Mendelson* v. *State of New York*, 218 App. Div. 210, affd. 245 N. Y. 634. See, also, *McCormick* v. *State of New York*, 289 N. Y. 572; *Van Duzer* v. *Elmira, Cortland & Northern R. R. Co.*, 75 Hun 487, affd. 152 N. Y. 634, and *Logan* v. *State of New York*, 254 App. Div. 410.) Thus, riparian owners, exercising such natural right, have been given relief by

the courts after a definite stream had been narrowed by embankments or walls (*Hartshorn* v. *Chaddock,* 135 N. Y. 116, *supra*), or by an encroaching bridge or an insufficient culvert (*Orvis* v. *Elmira, Cortland & Northern R. R. Co.,* 17 App. Div. 187, affd. 172 N. Y. 656; *Cooper* v. *New York, Lackawanna & Western R. R. Co.,* 122 App. Div. 128; *Spink* v. *Corning,* 61 App. Div. 84, affd. 172 N. Y. 626). On the other hand, while it has been stated that " The right of a riparian owner to drain the surface-water on his lands into a stream which flows through them, and which is its natural outlet is an incident to his right as riparian owner to the reasonable use of the stream.", it has also been stated that " this right is not, * * *, an absolute right under all circumstances, irrespective of the size of the stream, or the natural purpose which it subserves, to throw into it, surface-water by means of ditches or drains, when by so doing it will be filled beyond its natural capacity, and overflow and flood the lands of a lower proprietor." (*Noonan* v. *City of Albany,* 79 N. Y. 470, 477.) And in the same case (p. 476) the court stated " A municipal corporation has no greater right than an individual to collect the surface-water from its lands or streets into an artificial channel, and discharge it upon the lands of another, nor has it any immunity from legal responsibility for creating or maintaining nuisances."

It is contended by the State of New York that whatever caused the creek to erode its west bank prior to 1911 might well have been the cause for the erosion during the period of 1938 to 1945, and that consequently there can be no liability on its part. To sustain that contention we would have to speculate and to surmise that the erosion complained of would have taken place irrespective of the placing of the rip-rap or fill in the stream. Whether or not there would have been erosion or accretion of the west bank of the creek between 1938 and 1945 had the waters of the creek remained undisturbed is a question which must remain unanswered, for speculation and surmise can afford no basis for a finding in connection therewith. (*Lahr* v. *Tirrill* [two cases], 274 N. Y. 112.) The fact remains that erosion did result, that the fill or rip-rap was there during that period of time, and that there is convincing proof that the presence of such fill or rip-rap was the competent producing cause of the erosion. Unless we ignore these facts, we must find that the proximate cause of the erosion was the placing of such fill or rip-rap in the bed of the creek by the State of New York.

We conclude, therefore, that when the State of New York placed the stone fill or rip-rap in the bed of Stillwater Creek at

the foot of and in the vicinity of the concrete wall, the natural flow of said creek was obstructed and impeded, and the stream was by said artificial means diverted, turned aside, and prevented from flowing as was natural and usual, with the result that the waters of the creek were thrown over and against the west bank of the creek causing a continual erosion thereof. Under the circumstances, therefore, the State of New York is responsible for the damages, if any, which have been sustained by the claimant by reason thereof, and we now proceed to a consideration of that phase of this case.

Claimant, as and for his damages herein, asks only for the reasonable cost of erecting the temporary retaining wall and the estimated reasonable cost of the permanent retaining wall. His position with reference thereto is best set forth by the following appearing in his brief (pp. 32, 33):

'' We submit that the claimant is entitled to the recovery of the cost of the temporary wall, and that he is also entitled to the cost of installing a permanent wall. It is, of course, true that in the ordinary case the damages recoverable in cases of this general character are the value of the property destroyed or the diminution caused by the state's negligence in either the market or rental value of the property injured.

'' That general rule, however, is subject to many exceptions, the principal one of which is that it is the duty of a claimant to reduce his damages as much as he reasonably may. This claimant would not be permitted to allow this erosion to continue until the building had been undermined and fallen into the creek, and then ask the state to pay for it, if by prudent measures he could prevent the loss. On the other hand, the claimant is certainly not confined in his damages to the loss of the dirt which had been washed away in the years between 1939 and 1946, and which dirt, of course, was infinitesimal compared to the loss which he would sustain had the erosion continued and his buildings been undermined and damaged or destroyed. Here the damage to the buildings could easily exceed the cost of protecting them, and he would have suffered, had the erosion continued, not only the damage to his building, but the loss of his business and the consequent loss of profits.''

Let us examine claimant's position. In *Hartshorn* v. *Chaddock* (135 N. Y. 116, 122–123, *supra*) it is stated: '' The owner is not in every case of injury to the soil, the trees or the fixtures, driven to proof of the diminution in value of the estate by reason of the injury, in order to establish his damages.

The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible. * * * The loss of the use of the property in the meantime, in consequence of the injury, has sometimes been allowed, and would seem to be reasonable and just. Therefore, proof of the cost of restoring the land to its former condition, and proof of the diminution in the market value of the lot, was in this case alike admissible. There were two methods of measuring the damages depending upon circumstances, and all competent evidence offered should have been received by the referee, and hence it was not error to admit proof of the cost of restoring the soil to the condition it was in before the overflow. * * * But there was no evidence offered by either party in regard to the effect of the injury upon the market value of the lot and we cannot know from the record whether the diminution in value was more or less than the cost of restoration. * * * When things attached to the soil, and, therefore, part of the realty, are injured or destroyed or some part of the soil itself carried away, the value of the thing injured or destroyed and the cost of replacing or restoring it, or the expense of restoring the soil to its condition prior to the injury or trespass, may be proved in an action by the owner to recover his damages. When all the evidence is in, it may turn out that the diminution in value of the freehold is the legal measure of damages, but the value of the thing taken or the cost of reparation is none the less evidence upon the question.'' It is obvious that claimant has not proceeded herein pursuant to either of the methods in said case set forth.

It seems quite clear to us that claimant has proceeded in the matter of his damages upon the assumption that the invasion of his rights effected by the acts of the State of New York is permanent. This is an erroneous assumption in an action at common law under the circumstances prevailing. The invasion of claimant's rights is not necessarily permanent. The offending situation may be remedied, and claimant's land may be restored to its former condition. There is no presumption that the State of New York will persist in its course of conduct, but, on the con-

trary, the claimant's damages are to be assessed on the assumption that it will right the wrong, and, therefore, claimant is limited to the injury which he had sustained up to the time of the filing of his claim. (*Dietzel* v. *City of New York*, 218 N. Y. 270; *Uline* v. *New York Central & H. R. R. R. Co.*, 101 N. Y. 98; *Pappenheim* v. *Metropolitan El. Ry. Co.*, 128 N. Y. 436; *Stowers* v. *Gilbert*, 156 N. Y. 600; *Paddock* v. *Hohneker Dairy*, 246 App. Div. 862, affd. 272 N. Y. 419.) Upon the record herein claimant's damages must be measured by the rule in the *Uline* case (*supra*), and we, therefore, cannot and do not allow any recovery for the estimated reasonable cost of a *permanent* retaining wall.

A different situation exists, however, with reference to the matter of a *temporary* wall. As of the time of the filing of the claim herein, an injury had been done to claimant's property. In erecting the temporary retaining wall claimant was within the principle laid down by the courts that " The rule is of general and widespread application that one who has been injured either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and that if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure " (*Norske Ameriekalinje* v. *Sun Print. & Pub. Assn.*, 226 N. Y. 1, 7); and that " it is held as a natural corollary to this rule of duty not only that the injured party who makes a successful effort to avoid or reduce damages will be allowed to recover the expenses necessarily incurred in so doing, but also that he will be allowed to recover the expenses of a proper effort even though it proves unsuccessful. The scope of the effort and the limit upon the expenses for which he may recover, especially in the latter case, are naturally defined by different words in different cases. But from them all we think the general rule may be fairly deduced that the effort must be made in good faith, that it must be conducted with reasonable skill, prudence and efficiency, that it must be reasonably warranted by and proportioned to the injury and consequences to be averted, and that it must be made under a belief reasonably justified that it will avoid or reduce the damages otherwise to be apprehended from the wrong complained of." (*Norske Ameriekalinje* v. *Sun Print. & Pub. Assn., supra*, p. 8.) Therefore, for the foregoing reasons we are of the opinion that claimant is entitled to recover for the reasonable cost of erecting the temporary wall and in our accompanying decision we are making an award in that amount.

In view of what we have already said herein, claimant's motion to amend (S.M. 65) is denied. State's Exhibits " A " through " I " admitted subject to being stricken out by the court remain in evidence. (Civ. Prac. Act, § 374-a; *American Historical Soc.* v. *Glenn,* 248 N. Y. 445, 451; *Mayor of City of New York* v. *Second Ave. R. R. Co.,* 102 N. Y. 572; *Wightman* v. *Campbell,* 217 N. Y. 479.) Motions made by the State of New York to strike out testimony concerning the temporary wall on the ground that it is not the proper measure of damage (S.M. 169) is denied. Motion of the State to strike out testimony concerning cost of building the permanent wall on the ground that it is not the proper measure of damage is denied as not being timely made, said evidence not haviug been objected to when offered and received. (S.M. 75, 76, 79.)