LANITE SALES Co., INC., et al., Plaintiffs, *v.* KLEVENS CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, February 24, 1954.

*Barrett, Molloy, Geoghan & Swiggett* for defendant.

*Nicholas Atlas* for plaintiffs.

GELLER, J. This is an action to recover $62,938.59 for water damages to plaintiffs' personal property. Liability is asserted against defendant corporation, a building contractor, which was engaged in making an alteration to the structure in which the personal property was stored or located. The case was tried without a jury.

Two causes of action are alleged. The first cause of action pleads that the water damage resulted from defendant's negligence in the course of its performance of certain building reconstruction work. The second cause of action, introduced at the trial on motion to amend the complaint, alleges liability upon the theory that plaintiffs are third-party beneficiaries under a certain contract between the defendant and the City of New York, owner of the structure here involved, pursuant to which defendant undertook the building reconstruction.

For convenience, plaintiff Lanite Sales Co., Inc., is referred to as " Lanite ", and plaintiffs Tide Mercantile Corporation, Hagar, Inc., The Rite Products Sales Corporation and Garfel Corp. are referred to as " Added Corporations."

Lanite was a sublessee and occupant of certain premises beneath the Brooklyn Bridge, designated as arches 7 and 8 and part of arch 9. In 1951, the City of New York, as landlord, endeavored to remove Lanite, together with tenants of other arches, from occupancy of the premises through the medium of a Municipal Court summary proceeding. A stipulation was entered into in said proceeding between the various parties thereto, including Lanite, under which Lanite agreed to vacate

from the top floor of the three arches it then occupied not later than July 13, 1951, and to vacate from the remaining floors it occupied on " fair notice " that the premises were " needed " by the city for the reconstruction of the bridge, provided that Lanite be " given a fair opportunity to vacate."

Lanite surrendered possession of the top floor on or before July 13, 1951. Defendant makes no claim, and no proof was offered to show, that Lanite was given notice to vacate from the remaining space it occupied.

Toward the close of the trial, it developed that Lanite owned only part of the damaged personal property, that a substantial portion thereof was owned by the Added Corporations, that said corporations were associated with Lanite, and that these corporations have the same or substantially the same stockholders and officers. The uncontradicted testimony also shows that the relationship between the Added Corporations and Lanite was that of bailors and bailee as to the property owned by said Added Corporations. The Added Corporations were, therefore, joined as parties plaintiffs on Lanite's motion consented to by the defendant, and counsel for Lanite appeared as their counsel.

A recovery by either a bailee or bailor as to the property owned by the bailor would be a bar to an action against the defendant by the other. (*Green* v. *Clarke,* 12 N. Y. 343; cf. *Berger* v. *34th St. Garage,* 274 App. Div. 414.) Since the Added Corporations have been joined as plaintiffs, any possible exposure of the defendant to further claims by them is entirely eliminated. Of course, the damages, if any, sustained by plaintiffs are to be determined separately as to each of them on the basis of their respective ownership interests.

To avoid an unduly protracted trial, counsel have stipulated, with the consent of the court, that if the issue of liability shall be decided in plaintiffs' favor, an assessment to compute the amount of plaintiffs' damages shall be ordered for hearing by an official referee. (Cf. *Alexander's Dept. Stores* v. *Ohrbach's, Inc.,* 269 App. Div. 321.)

Under the terms of the aforesaid contract made in July, 1951, between defendant and the City of New York, defendant was in charge of, supervised and performed the reconstruction and repair work set forth under said contract. The supervision and performance provisions also covered and affected the work required under the contract to be performed over and above the space or premises occupied by Lanite.

It is well-settled law that a contractor engaged in repair or reconstruction of a building is liable to a tenant or occupant

of the building for its negligent acts. (*Hyman* v. *Barrett,* 224 N. Y. 436, 439; *Komar* v. *Wynn,* 125 Misc. 176; *Hanley* v. *Central Sav. Bank,* 255 App. Div. 542, affd. 280 N. Y. 734; *Hailfinger* v. *Meyer,* 215 App. Div. 35, 36; *May* v. *11½ East 49th St. Co.,* 269 App. Div. 180, 182; *Kagan* v. *Avallone,* 243 App. Div. 437, 439.)

I find from the evidence that the defendant was careless and negligent in performing the reconstruction work called for by the contract; that it failed, while performing the work, to construct, maintain and provide necessary and adequate protection against the flow and seepage of rain water into the premises, and that it failed to take the necessary precautions to prevent plaintiffs' property from being damaged by said water which came through openings made in the arches, the roof supports, above the third floor. Due to the defendant's negligent and careless acts and omissions, various boxes, cases, cartons, packages and bundles of plaintiffs' property located on the first and second stories of the aforesaid arches were damaged by the flow of rain water on March 20th, April 28th, May 12th, May 20th, and on other dates between March 20 and June 30, 1952.

The City of New York, as landlord, was under a duty to Lanite properly to operate and maintain the premises during the reconstruction work and, in the circumstances of this case, could not avoid liability by having delegated the performance of its duty to a contractor. (*Hyman* v. *Barrett, supra*; *Williams* v. *Board of Trustees,* 204 App. Div. 566; *Deming* v. *Terminal Ry. of Buffalo,* 169 N. Y. 1; *Hanley* v. *Central Sav. Bank, supra; Hailfinger* v. *Meyer, supra; Komar* v. *Wynn, supra;* Restatement, Torts, § 422 [1934]; cf. *Caldwell* v. *Wildenberg,* 228 App. Div. 557.)

As appears from the cases just cited, the obligation of the city, as landlord, and that of the contractor, is independent of each other. The city is not sued in this action. Instead, plaintiffs, in their second cause of action, assert as a further ground of defendant's liability its contractual obligations under the defendant's contract with the city towards the plaintiffs as third-party beneficiaries thereof.

The pertinent portions of the said contract, dated July 11, 1951, between the City of New York and the defendant, are as follows:

" CHAPTER II THE WORK AND ITS PERFORMANCE * * * Article 7. Protection of Work and of Persons and Property. * * * During performance and up to the date of final acceptance, the Contractor must take all reasonable precautions to protect the

persons and property of others on or adjacent to the site from damage, loss or injury resulting from his or his subcontractor's operations under this contract, except such property as the owners thereof may themselves be under legal duty to protect. * * * If the persons or property of others on or adjacent to the site sustain loss, damage or injury resulting from the negligence or carelessness of the Contractor, or his subcontractors, in their performance of this contract, or from his or their failure to comply with any of the provisions of this contract or of law, the Contractor shall indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof.''

Also pertinent is the portion of '' Contract 3 (Special Conditions) '', which is part of said contract and reads as follows: '' ART. 11 — SPECIFIC PROTECTION OF EXISTING STRUCTURES (a) General. During certain portions of the operations, the structures will be opened to the elements and particularly susceptible to damage. The Contractor shall therefore make special provisions to protect the structure from water, debris and other hazards. The Contractor shall submit to the Engineer, for approval, plans for providing the necessary protection. * * * (b) Protection of Tenants. The Contractor shall make special provisions, satisfactory to the Engineer, for the protection of the tenants and their property against injury or damage from his own operations and the elements. On or before July 13, 1951, the upper floors of the arches will be completely vacated, but the tenants (except in Arches 3, 4, 5 and 6) will continue to conduct their businesses on the remaining floors. This, however, shall not relieve the Contractor from his obligation to protect the arches against flooding or other damage. * * * The removal by the tenants of their property from the upper floor of the arches shall not relieve the Contractor of his duty to protect from damage the property of the tenants that remain on the lower floors. The Contractor shall install planking over floor openings at the site of his operations and shall take other effective steps to safeguard the tenants from inconvenience, interference and damage that may be caused by his operations or by the elements, as ordered by the Engineer.''

The contractual provisions aforementioned accrued to the plaintiffs' benefit and the defendant thereby made itself directly liable to the plaintiffs for its negligence, even if no liability on the part of the defendant contractor to the plaintiffs would otherwise exist (*Coley* v. *Cohen*, 289 N. Y. 365; *Schnaier* v. *Brad-*

*ley Contr. Co.,* 181 App. Div. 538; *Root Neal & Co.* v. *Creadon,* 290 N. Y. 733).

Plaintiffs had the option to sue the defendant and the City of New York, or either of them. Had the plaintiffs sued the city and recovered against it, the city, as the owner of the property, could, of course, recover over as against the independent contractor, the active wrongdoer (*Scott* v. *Curtis,* 195 N. Y. 424; *Hailfinger* v. *Meyer, supra*).

There is no issue as to the failure to give any required notice to the defendant or the City of New York in the circumstances of this case.

While the plaintiffs were free from negligence in relation to the essential occurrences upon which defendant's liability for negligence is predicated, the question remains whether plaintiffs made reasonable efforts to minimize the damage (*Norske Ameriekalinje* v. *Sun Print. & Pub. Assn.,* 226 N. Y. 1, 7; *Rexter* v. *Starin,* 73 N. Y. 601; *Zidel* v. *State of New York,* 198 Misc. 91, 98; *9th Ave. & 42nd St. Corp.* v. *Zimmerman,* 217 App. Div. 498, 500).

In *Norske Ameriekalinje* v. *Sun Print. & Pub. Assn.* (*supra,* p. 7) the court stated: " The rule is of general and widespread application that one who has been injured either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and that if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure." From the evidence adduced on the trial, it appeared that reasonable efforts to minimize the damage may not have been made by plaintiffs as to certain of the alleged damaged items, such as the sixty-five steel " rubber heel molds." The Official Referee, in computing damages, is also to take into consideration all such items and the extent to which the plaintiffs are debarred from recovery for the additional damages which may have resulted from such failure.

*Norske Ameriekalinje* v. *Sun Print. & Pub. Assn.* (*supra,* p. 8), also points out: " Then it is held as a natural corollary to this rule of duty not only that the injured party who makes a successful effort to avoid or reduce damages will be allowed to recover the expenses necessarily incurred in so doing, but also that he will be allowed to recover the expenses of a proper effort even though it proves unsuccessful."

As to most of the property damaged, it would appear that plaintiffs did make a reasonable, although unsuccessful, effort

to avoid or reduce damages and, consequently, they are entitled to recover the reasonable expense necessarily incurred in so doing. The Official Referee is to include such sum in the computation of damages.

The referee is also to consider the state and condition of the alleged damaged articles prior to the respective times of the acts of negligence here found, as well as the extent, if any, to which the plaintiffs failed to mitigate damages, as aforesaid, between the dates of the various occurrences of the flow of rain water.

The failure of plaintiffs to make a reasonable effort to minimize damages does not bar them entirely from recovery, as defendant contends. It merely prevents the recovery of such damages as might have been avoided by reasonable efforts on plaintiffs' part (*Colonna* v. *State of New York*, 232 App. Div. 385, 386).

The foregoing constitutes the decision required by the Civil Practice Act.

Motions made by the defendant at the end of the case are denied, and a judgment is hereby rendered for the plaintiffs. The assessment of plaintiffs' damages is respectfully referred to Honorable DENIS O'LEARY COHALAN, Official Referee, for computation, in accordance with this decision.

Submit order accordingly.