Ann Allen, Claimant, *v.* State of New York, Defendant. (Claim No. 30894.)

Horace Allen, Claimant, *v.* State of New York, Defendant. (Claim No. 30895.)

Clayton B. Williams, Claimant, *v.* State of New York, Defendant. (Claim No. 30896.)

Court of Claims, August 9, 1955.

*Wilbur Knapp, Charles Knapp* and *George W. Pratt* for claimants.

*Nathaniel L. Goldstein, Attorney-General (John H. Bartow* of counsel), for defendant.

LOUNSBERRY, P. J.   These are flood claims arising from a flood in the Chemung River around March 30, 1951.   The claimant Ann Allen owned two farms to the east of Corning in Steuben County, which were bounded northerly by the river, and on which her husband, the claimant Horace Allen, conducted farm operations.   The claimant Clayton B. Williams owned a nearby farm, south of, but not bounded by, the river.   Incidentally, in the area in question the river actually flows in a southeasterly, almost southerly, direction, but it was generally assumed in the testimony that its flow was easterly, and the directions herein mentioned follow that assumption.

Prior to 1942, there had existed along the southerly side of the river at Corning, and extending easterly to the Allen premises, where it terminated, a dike or levee, intended primarily to protect the City of Corning from flood waters.   The dike ran approximately parallel with the river until it reached a point perhaps 1500 feet westerly from its terminus, when it angled to the left toward the river and thus away from the Allen farm buildings.   In time of flood, water came around the end of the dike and backed across portions of the Allen lands and indeed well into South Corning, but there was no appreciable current in this back water and it was of some benefit in that it deposited silt on the land.

In 1942, in connection with a Federal flood control project, the dike was rebuilt.   The angle section was removed entirely and replaced with a new section of similar length but extended in a straight line with the more westerly portion, so that the new point of terminus was some 600 to 800 feet southerly from the old terminus, and so that the new dike pointed directly toward, but terminated westerly from, the house and other buildings on the Allen home farm.   In addition, a cross dike, leading southerly from the main dike, was constructed at a point a little to the west of the new section, the object being to prevent water from backing into South Corning.

The main objective was apparently accomplished.   Corning had improved flood protection, and the cross dike so protected the formerly flooded lands on the east side of South Corning

that they could be and were developed for housing purposes. There was also another accomplishment, however, with which the claimants are not pleased. Thanks to the relocation of the angle section, their properties were now, in time of flood, exposed to the river current, formerly deflected by the angling of the old dike, and the cross dike tended to impound the back water and to increase its depth. The result, they maintain, was washing and eroding of their land, flooding of their cellars, and various damage to buildings and personal property.

The court is satisfied that the flood control plan was defective insofar as these claimants are concerned in that it was bound to result and did result in increased flood height, swiftness of current and damage to their properties. Before they can recover therefor from the State, however, two basic questions must be considered.

The first is whether the claimants have stated any cause of action against the State of New York. The Federal Government devised the plan and constructed the project through an independent contractor and under the supervision of army engineers. The State's only direct part in the matter was to provide the necessary land and easements, and to maintain the works after their completion. Actually the State also approved the plan, but nothing in the flood control statutes, either State or Federal, necessitates such approval. No negligence in the actual construction or in the State's subsequent maintenance was alleged or proved, so that any liability on the part of the State must arise from its legal obligations as owner of the land where the flood control works are located.

We have already had occasion to consider the nature of the relationship between the State and Federal Governments under the Federal flood control legislation (U. S. Code, tit. 33, ch. 15, §§ 701–701t), and the companion New York legislation (L. 1936, ch. 862, as amd.) and have concluded that it is in the nature of a joint venture, and that the State, as owner of the lands involved, remains subject to those obligations of a landowner which are nondelegable, even though it does not design, supervise or perform the work. (*Miller* v. *State of New York,* 199 Misc. 237, mod. as to amount and affd. 279 App. Div. 1139, motions for reargument, resubmission and leave to appeal to the Court of Appeals denied, 280 App. Div. 882; *Wolcott* v. *State of New York,* 199 Misc. 229; *Central New York Broadcasting Corp.* v. *State of New York,* 206 Misc. 101; *Midolla* v. *State of New York,* 46 N. Y. S. 2d 345.)

This leads to the inquiry whether the State as a riparian landowner, violated any duty to the claimants when it suffered the dike to be relocated and the cross dike to be constructed in such manner as to cast a swifter and greater quantity of water onto claimants' lands. The State cites the leading English case of *Rex* v. *Commissioners* (8 Barn. & Cr. 355, 108 Eng. Rep. 1075), to the effect that a riparian owner may without liability erect a dike to protect his lands even though he thereby causes the water to flow with greater force upon another, the injured party's remedy being to construct his own dike (in point of fact the claimant Allen did, but the 1951 flood washed it out), and there is a line of cases in California, Indiana and Missouri to the same effect. We are satisfied, however, that this is not the majority American rule and is not the rule in New York. The prevailing rule is that a riparian owner may not construct a dike if such dike in times of ordinary floods (the 1951 flood was not extraordinary) will cause the waters to damage the lands of another (23 A. L. R. 2d 750, note). The leading New York cases which apply this rule are *Hartshorn* v. *Chaddock* (135 N. Y. 116); *Ordway* v. *Village of Canisteo* (66 Hun 569) and *Zidel* v. *State of New York* (198 Misc. 91). The *Ordway* case is significant in that the facts have many similarities to those in the present case, and the *Zidel* case is significant in that it applies the rule against the State.

Also significant is *Crawford* v. *Rambo* (44 Ohio St. 279), wherein the court asserted that it was the duty of a riparian owner, before erecting an embankment, to exercise care to determine whether it would cause material injury to lands of others in time of such floods as might reasonably be anticipated, and further, that if it should subsequently develop that there was such injury, although not foreseen, it was then his duty to abate or modify the structure so to avoid further injury. In the present case there was ample evidence of injury in floods between 1942 and 1951, but the State took no effective measures to avoid repetition.

From the foregoing we conclude that the State, as a riparian landowner, had a duty not to erect an embankment which would discharge waters onto the claimants to their damage, and that this duty was violated. We consider such duty quite as nondelegable as the duty of an adjoining landowner not to deprive his neighbors' land of lateral support (*Miller* v. *State of New York, supra; Wolcott* v. *State of New York, supra*), and as the duty of a landowner not to conduct on his premises some operation which is inherently dangerous to others, no matter how

skilfully performed (*Janice* v. *State of New York,* 201 Misc. 915, and cases therein cited).

The second basic question is whether the claims were timely filed. Subdivision 3 of section 10 of the Court of Claims Act requires that a claim or notice of intention to file claim must be filed within ninety days from the date the claim accrues. The flood occurred March 30th and 31st; the claims were filed July 31st, or 122 days later. It is, of course, now well established that a claim accrues, not on the date of occurrence of the event giving rise to it, but when the extent of the damages can be ascertained. (*Taylor* v. *State of New York,* 302 N. Y. 177; *Paduano* v. *State of New York,* 203 App. Div. 503; *Dufel* v. *State of New York,* 198 App. Div. 97; *Di Laura* v. *State of New York,* 169 Misc. 912; *Morrison & Quinn* v. *State of New York,* 204 App. Div. 623.) As set forth in the *Dufel* case (p. 102): "The expression 'claim accrued' is not identical with the expression 'cause of action accrued.' The claim accrues when it matures, and the words 'claim accrued' have the same meaning as 'damages accrued.' * * * it is a fair construction of this statute that his claim for injury to crops and for the use of crop lands accrues during the crop season and is accrued at the end of the season. It is then and then only that his damages and his claim have matured, have accrued. Not until then can he know the conditions of the season, the rains or drought, to what extent his lands would be overflowed * * * Some damages were suffered before and some after May 27, 1916, but it would be practically impossible to separate those damages suffered before May twenty-seventh from those suffered after that date, because the damages are the damages of the season."

It is a close question whether the claimants have brought themselves within the foregoing exception to the usual ninety-day rule. The flood waters receded within about four days and much of the damage was immediately or soon apparent. The claimants maintain, however, that it was impossible to get on the land, which was kept soaked by continuing rains, for about a month to ascertain the extent of damage, and there is also a question whether the damage to the septic tank systems and to the farm machinery could be fully ascertained until they had been taken apart and repaired, a process which required several weeks. We think that the claimants are entitled to the benefit of the doubt on these points and therefore conclude that the claim did not accrue until some time in May, so that the claimants are within the permissible period.

This leaves only the question of damages. On both Allen farms the cellars were filled and damaged and their contents spoiled, the septic tank disposal systems were plugged and required repair and replacement, the furnaces were damaged and one replaced, farm machinery was immersed and required overhaul, fences were washed out, and various items of personal property were either washed away or damaged. Portions of the land were washed and eroded although in our opinion the amount of such damage which can be attributed directly to the March, 1951, flood is much less than the claimants assert. After reviewing the various items we find that the claimant Ann Allen suffered damage to land, buildings and fixtures in the amount of $3,000, and that the claimant Horace Allen suffered damage to personal property in the amount of $1,000.

The claimant Clayton Williams suffered similar but less extensive damage, which we evaluate at $1,000.

The foregoing constitutes the written and signed opinion upon which judgment in this action shall be entered (Civ. Prac. Act, § 440).

Let judgment be entered accordingly.