CENTRAL NEW YORK BROADCASTING CORP., Respondent, v. STATE OF NEW YORK, Appellant.   (Claim No. 31163.)

Fourth Department, January 16, 1957.

*James E. Wilber* for respondent.

*Jacob K. Javits, Attorney-General (John R. Davison, Joseph H. Murphy* and *James O. Moore, Jr.,* of counsel), for appellant.

VAUGHAN, J. This claim was brought against the State of New York to recover damages for erosion of claimant's property allegedly caused by negligent construction of a flood control project in the area of Onondaga Creek. The State appeals from a judgment for the claimant.

The Flood Control Act of 1936 (U. S. Code, tit. 33, ch. 15) authorizes the Federal Government to construct flood control projects in various areas throughout the nation. Improvements of waterways for flood control purposes are placed under the general jurisdiction of the United States Army and under the immediate supervision of the chief of engineers (§ 701b). Section 701c provides: "After June 22, 1936, no money appropriated under authority of section 701f of this title shall be expended on the construction of any project until States, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of the Army that they will (a) provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, except as otherwise provided herein; (b) hold and save the United States free from damages due to the construction works; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army ".

In 1936 the Legislature authorized participation by the State of New York in federally-financed flood control projects (L. 1936, ch. 862, as amd.). The Superintendent of Public Works was directed to acquire by appropriation any property or interest therein necessary for any such project (§ 7, subd. 1), and he was required to maintain the same after it was completed and formally turned over by the Federal Government to the State.

The preceding indicates the legal framework underlying Federal-State co-operation in the control of floods. So far as concerns the Onondaga Creek project, the State through its Superintendent of Public Works executed to the United States the " assurances " required by the Flood Control Act. The State also supplied the necessary lands for the project, but the actual work was done by an independent contractor for the army engineers. There was no claim and no proof that the State did any of the work, that it was in control of the land, or that it

was in privity with the contractor. So far as appears, the State did not prepare or approve the construction plans.

It is unnecessary to indicate the manner in which claimant's property sustained the erosion for which this action was brought. The damage occurred during a spring flood, at a time when the project was unfinished and had not been turned over to the State for operation. The claim states that it "is for the negligence of the State of New York, its agents, servants and employees, in preparing, approving, ratifying, adopting and participating in a faulty, defective and negligent plan of flood control". There was no evidence of defective plans or of State participation in the construction of the project. We believe that a series of events not to be foreseen produced damage to claimant's property.

Even assuming, however, that some fault was shown, it was not fastened upon the State, which did nothing but supply the necessary land and rights of way. Whether tort liability should be imposed in such a situation, we have never had occasion to say. In *Allen* v. *State of New York* (208 Misc. 385, affd. 2 A D 2d 644) a dike was so constructed that it directed flood waters toward the claimants' premises, which were damaged after the State had resumed control and undertaken to operate the project. And *Miller* v. *State of New York* (199 Misc. 237, mod. 279 App. Div. 1139) rests upon the duty of a landowner to refrain from depriving adjoining premises of their lateral support. In neither of those cases was the present problem posed. It is true that in the *Miller* case (p. 241) the Court of Claims had characterized the Federal-State relationship as a "joint venture", but it was immediately added that "neither can realistically be deemed the agent of the other." However the relationship might be popularly expressed, it cannot be considered a joint venture for purposes of tort liability in the absence of joint control or management of the property (30 Am. Jur., Joint Adventurers, § 11; *Fries* v. *United States,* 170 F. 2d 726).

It is the lack of control which is decisive of this case. A landowner is ordinarily relieved of responsibility where he is out of control (*Cullings* v. *Goetz,* 256 N. Y. 287). If an owner, in control, engages an independent contractor to perform work in the course of which an innocent third party is injured, then the question arises whether the duty was delegable (e.g., *Tipaldi* v. *Riverside Mem. Chapel,* 273 App. Div. 414, affd. 298 N. Y. 686), for it rested upon the owner in the first instance. But where the owner is out of control, and the injury is received in the course of performance of work by an independent contractor not hired

by the owner and not in privity with him, it is difficult to understand where any duty, delegable or otherwise, rests upon the owner. The State, in the present case, was simply a supplier of land. It did not hire the contractor and could not have discharged him, no matter with what extreme lack of care he performed his job. There was an intervening sovereign (cf. *Williams* v. *United States,* 189 F. 2d 607). The contractor was apparently engaged by the United States and was responsible to the army engineers but to no one else. So far was the State in the position of an innocent bystander, until the work was completed and turned over for operation, that paragraph (g) of the " assurances " provided " That it is understood by the State that the United States is not committed or obligated in any way to complete the said flood control work or any part thereof, and that the State agrees to accept any part of said project." That is not the sort of situation in which a duty should be implied and tort liability imposed.

Certainly liability may not be based on a theory of trespass or of interference with the riparian rights of the claimant. There was no claim and certainly no proof of any voluntary or intentional trespass (*Phillips* v. *Sun Oil Co.,* 307 N. Y. 328). Neither was there evidence that claimant ever owned any riparian property or enjoyed any riparian rights, or if it did, that they were not taken when the State condemned the lands and easements necessary for construction of the project.

We conclude that no negligence on the part of anyone was shown to have caused claimant's damage, that the State is not responsible for the acts or omissions of the contractor, that liability cannot be imposed upon the State solely by reason of its ownership of the premises, and that the judgment should be reversed and the claim dismissed.

McCURN, P. J. (dissenting). The claim against the State alleges as stated in the majority opinion that the plan of flood control was in itself faulty, defective and negligent in that it involved an unnecessary risk of damage to the claimant's property and facilities. I cannot agree that the State is an innocent bystander which owes no duty or responsibility for damage arising from following out defective and faulty plans involving a forseeable and unnecessary risk to claimant's property. It would seem that approval and acquiescence in the plan on the part of the State is implicit in the statute authorizing the State to participate in the project (L. 1936, ch. 862 and amendments thereto). The State appropriated lands and gave

possession to the Federal Government for the express purpose of constructing the project in accordance with the plan. It can hardly claim lack of knowledge or nonacquiescence in the plan. The State has been held liable for damages resulting from a faulty flood control project occurring after the project was completed. (*Allen* v. *State of New York*, 208 Misc. 385, affd. 2 A D 2d 644). If a defective plan is the proximate cause of the damage, it would seem unimportant whether the damage occurred during the progress of construction or after the construction was completed. The State was at all times the owner of the lands and owed a duty not to interfere with or change the natural channel of the stream so as to cause damage to other riparian owners. The difficulty here is that the record does not clearly show whether the damage in question is due to a defective plan or to the negligence of the contractor, or both. The claim should, in my judgment, be sent back for a new trial where all of the material facts can be fully developed.

I therefore dissent in part and vote for reversal and a new trial.

All concur, McCurn, P. J., concurs in the reversal but votes for granting a new trial, in a separate opinion. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Judgment reversed on the law and facts, without costs of this appeal to either party, and claim dismissed. Certain findings of fact disapproved and reversed and new findings made.