KERHONKSON LODGE, INC., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31719.)

Third Department, November 20, 1957.

*Philip Korn* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Richard H. Shepp* and *John R. Davison* of counsel), for respondent.

FOSTER, P. J. This is an appeal from a dismissal, after trial, of a claim for flood damages alleged to have been caused by certain highway drainage improvements made by the State in connection with the maintenance of a State highway in the town of Rochester, New York, known as Route 44–45.

Claimant owns and operates a hotel property near the Hamlet of Kerhonkson in Ulster County, and its land, consisting of approximately 100 acres, is on both sides of the highway which runs generally east and west. The contour of claimant's land slopes, at a grade not stated, from south to north. The hotel buildings are on the north side of the highway, and the latter has a heavy down grade from east to west, stated to be about 7%.

The highway was built by the State in 1931, and at one place a culvert some three or four feet in size was placed under the road and discharged surface water onto the north parcel of claimant's premises. A concrete drainage ditch, leading to the culvert, was constructed along the south side of the road. The original plans also called for a drainage ditch on the north

side of the road, and there is a dispute as to whether such a ditch was put in prior to 1952, or at least as to its location and length prior to that year. There is testimony from the State's witness that no continuous ditch existed on the north side of the highway prior to 1952. In any event there was testimony for claimant, which was undisputed, that for over 20 years prior to 1952 the water discharged on claimant's property gradually dispersed itself and caused no damage.

In the Spring of 1952 the State deepened by about six inches the concrete drainage ditch on the south side of the highway, removing some concrete slabs for that purpose, and placing a fill of rocks in the deepened portion to prevent too rapid a runoff of water. Although claimant contends there was no ditch on the north side the State's witness testified that whatever ditch existed there was cleaned out, deepened by four inches, and extended into a continuous ditch about 150 feet in length, which ended 50 feet east or above the culvert. There was also some testimony, rather difficult if not impossible to evaluate from the record before us, concerning radial or weepage ditches, constructed also on the north side of the highway. Claimant's expert witness testified that the main ditch on the north side extended west to within 10 feet of the north end of the culvert, and that there was a bend in it designed to discharge water to that end of the culvert. In the opinion of this witness the change on the south side of the highway was not responsible for any appreciable increase in quantity or velocity in the flow of water from the south side of the road through the culvert. He attributed the cause of damage to an increase flow of surface water resulting from the changes made on the north side of the highway. The State's expert witness denied this conclusion, asserting that the ditch on the north side of the road ended 50 feet before it reached the culvert, but he admitted that it was possible for the water to break through and reach the north end of the culvert.

After the foregoing changes were made there was a heavy rain storm in November, 1952 which lasted for a couple of days. Claimant's land on the north side of the highway was eroded to such an extent that its private road was washed out and the piers and underpinnings of a new cottage building were undermined and damaged. Claimant offered proof that the damages amounted to something over $22,000. The State offered no proof on this issue and the trial court did not reach it since it found no liability on the part of the State.

Claimant's contention of course was that the changes made in the Spring of 1952 channeled and increased the flow of

surface water onto its land to such an extent so as to cause the damages complained of, and that the State should pay therefor. The State's contention was to the effect that no appreciable increase in the quantity of water or velocity of flow was caused by the drainage changes made, and that water from the culvert was discharged into a natural drainage basin consisting of a dry brook on claimant's land. The State did not deny that damage had been caused but its engineer suggested that, if the dry brook on claimant's property was not cleaned out, such neglect might have caused damage from water impounded by obstructions. The trial court rejected this suggestion as speculative, but in any event no duty rested on claimant to keep the dry brook free from any debris accumulated there from surface water discharged from drainage ditches constructed by the State.

By a bench decision the trial court dismissed the claim upon the theory that the drainage changes made were in accord with good engineering practice, and the damage sustained by claimant could not be attributed to any increased flow resulting from such changes made in the Spring of 1952. It observed also in its short memorandum decision that a determination of the relationship of the drainage changes to the damage complained of rested, of necessity, upon the testimony of engineers, and since the State's evidence on that score was more reassuring claimant had failed to sustain the burden of proof.

We are constrained to disagree with the trial court's view as to the effect of good engineering practice. The issue is whether the State so changed, channeled or increased the flow of surface water onto claimant's land by artificial means so as to cause damage to its property. If it did so, the State cannot escape liability on the theory that the changes were made in conformity with good engineering practice. In that respect the State had no greater rights than an individual under the same circumstances (*Noonan* v. *City of Albany*, 79 N. Y. 470; *Foster* v. *Webster*, 8 Misc 2d 61; *Zidel* v. *State of New York*, 198 Misc. 91).

Aside from the evidence of engineering practice, there is testimony that no damage was occasioned to claimant's property by the flow of surface waters from 1931 until after the drainage changes were made in 1952, a period of 21 years. This testimony was given by an interested witness but does not appear to have been disputed, but it may be suggestive at least of some connection between the acts of the State in 1952 and the damage thereafter sustained in the same year. Its weight and effect, of course, was entirely a matter for the trial court

to evaluate, but since no reference was made to it in the trial court's memorandum decision, we are unable to tell whether or not it was given any consideration.

In view of the foregoing the judgment should be reversed on the law and the facts, with costs to appellant against the State, and a new trial directed.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Judgment reversed on the law and the facts, with costs to appellant against the State, and a new trial directed.