ANGELO M. PADUANO, Appellant, Respondent, *v.* THE STATE OF NEW YORK, Respondent, Appellant.

Fourth Department, November 29, 1922.

State — action against State to recover damages caused by leakage of water from Barge canal into claimant's quarry — claimant leased quarry under agreement to produce stone for lessor — loss of profits is proper element of damages — plaintiff was allowed damages for wages and expenses of putting quarry into condition — allowances already made should be deducted from gross profits — interest allowed — allowance for expense of pumping excessive — value of plaintiff's wages proper element of damages — Statute of Limitations did not commence to run until discovery that quarry could not be used.

In an action against the State of New York to recover damages caused by the leakage of water from the Barge canal into the quarry leased by the claimant under an agreement to produce stone for the lessor, the claimant should have been allowed as part of his damages the loss of profits, if any, where it appears that the leakage was so bad that he was unable to operate the quarry.

However, in fixing the amount of the loss of prospective profits the court should take into consideration the allowance already made to claimant for loss of claimant's wages, the expense of uncovering the rock and other expenses incidental to preparing the quarry for operation and that allowance should be deducted from the gross profits. Interest on the amount found may also be allowed.

The allowance of $774 made by the court for pumping operations, which continued for forty-three days, is apparently excessive, because the evidence shows that the

impossibility of pumping the water from the quarry should have been realized at a much earlier date after the pumping was started.

The value of the plaintiff's services while engaged in the enterprise may properly be an element of his damages but the amount found by the court is not consistent with the original claim and the evidence and the items should be examined.

Certain items of the plaintiff's claim were not barred by the limitations prescribed by section 15 of the Court of Claims Act, which provides that a notice of intention to file a claim shall be filed within six months after the claim accrues, for the claim could not accrue until the claimant discovered, by an attempt to quarry the stone, that he was prevented therefrom by a negligent act of the State and six months did not elapse after that time before the notice of intention to file a claim was filed.

CROSS-APPEALS by the claimant, Angelo M. Paduano, and by the defendant, The State of New York, from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 13th day of May, 1921, awarding the claimant damages for injuries to property arising out of the negligent construction of the Barge canal.

*Fluhrer, Reed & White* [*Herbert T. Reed* of counsel], for the claimant.

*Charles D. Newton, Attorney-General* [*Frank K. Cook, Deputy Attorney-General,* of counsel], for the defendant.

DAVIS, J.:

The claimant on December 1, 1914, leased of the Vincent Stone Company, the owner, a stone quarry in the town of Murray, Orleans county, for the quarry season of 1915. This lease provided that he should quarry and produce stone for the lessor at certain specified prices.

He immediately began the preliminary work of uncovering the rock by stripping off the dirt and rubbish. The quarry had been worked before and contained water. This condition was not unusual as the quarry was below the surface of the ground and during the winter surface water accumulated therein. Under ordinary conditions it could be pumped out in the spring and the quarry could be kept dry by pumping from two to four hours each week with the same size pump as the claimant had installed.

The Barge canal was adjacent to the quarry. Because of its faulty construction the water from the canal leaked into the quarry to such an extent that it was impossible to reduce the amount of water which covered the stone. Due to this fact the claimant was unable to conduct his quarrying operations or to produce the quarried stone contemplated by his lease and contract.

The claimant has been allowed damages for his wages, for the

expense of the installation of a derrick and hoist necessary to the operation of the quarry, for the amount expended in stripping the overlying earth and rubbish from the quarry and for the amount expended for pumping operations; but has been denied his claim for loss of profits.

The claimant appeals, alleging error in the rejection of his claim for profits; and the State appeals, alleging that items were erroneously allowed upon the facts and that certain claims should have been disallowed because they were unenforcible under the six months' limitation prescribed by statute in such cases. (Code Civ. Proc. § 264; now Court of Claims Act, § 15.)

We think the claimant was entitled to the loss of profits. The evidence indicates that quarrying operations of this character could be conducted at a profit. While the contract between the claimant and the Vincent Stone Company does not in express terms require the latter to take the stone quarried by the claimant, we think its obligation to do so may be fairly implied from the terms of the contract. The specifications as to the measurement and inspection of the stone and the requirements of purchasers which may have to be met are all somewhat indefinite. We think it is susceptible of proof under the customs of the trade and business and the prevailing market conditions so that as the claimant proceeded with his work he would be able to conform thereto. Further than that the claimant should be able to show that whether the Vincent Stone Company took all his product or not, he would be able to find a market elsewhere for his quarried stone. If the claimant has suffered a loss of immediate and direct anticipated profits, that is a proper element of damages where it is certain that such damages are a direct result of the acts complained of or might naturally be expected to follow therefrom. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Danolds* v. *State of New York*, 89 id. 36; *Malone* v. *Weill*, 67 App. Div. 169; *Nash* v. *Thousand Island Steamboat Co.*, 123 id. 148.)

This rule, that gains prevented as well as losses sustained are proper elements of damage, is applicable in actions in tort as well as in actions on contract. (*Schile* v. *Brokhahus*, 80 N. Y. 614; *Lakeside Paper Co.* v. *State of New York*, 45 App. Div. 112.)

In fixing the amount of the loss of prospective profits the trial court should, of course, take into consideration any allowance already made to claimant for compensation and damages, for the claimant's wages, the expense of uncovering the rock by removing the dirt and other material, the expense of such pumping as would have been necessary in any event to empty the quarry and keep it dry, and the expense of installation of the derrick and

hoist. This work, necessary for the operation of the quarry at a profit has been adjusted and allowed. It is a part of the expense of producing the stone and must be charged against gross profits. Interest on the amount found may also pioperly be allowed. (*Lakeside Paper Co.* v. *State of New York, supra.*)

The allowance to the claimant of $774 for pumping operations between June 6 and August 2, 1915, impresses us as excessive. The claimant was attempting to pump the water out of his quarry back into the canal. Under ordinary circumstances with such pumps as he employed this could readily be done. His pumping operations had no effect on the water standing in the quarry for it leaked in from the canal through chips and beds of rock as fast as it was pumped out and remained constantly at the same level. It could be seen and heard as it flowed through. We doubt if a reasonable test of the nature and extent of the leak required the operation of this pump for forty-three days. In our opinion the conclusion reached by the claimant on August second, that he could not empty the quarry, might reasonably have been reached at a much earlier date in view of the circumstances. We recommend a new examination of this item.

One claim allowed for " wages " is somewhat obscure in its origin. The claim filed contained an item " value and loss of wages of claimant, 4 months, $400." The claimant, called as a witness, testified that this claim was " for the rest of the season from August 1st," and in reply to a question, testified that it was for the months of August, September, October and November, 1915. In the original findings made July 2, 1919, only one item of wages was allowed, to wit, $200, " from June 6, 1915, to the time he abandoned his operations, a period of two months." It seems there was a reargument, and claimant submitted requests to find. Request No. 54 is as follows: " That claimant is entitled to recover his reasonable wages from June 6, 1915, to the time he was compelled to abandon his operations, a period of two months, the sum of $200." The 55th request is, " That claimant is entitled to recover the further sum of $200 reasonable value and loss of wages for a further period of two months." Both were marked " found." In the new or second decision dated April 19, 1921, the claimant was allowed $400 for wages, one item of $200 being his reasonable wages from December 1, 1914, to June 1, 1915, and the other item June 1 to August 2, 1915, during the installation of the hoisting apparatus and his pumping operations, $200. The value of his services or " wages " while engaged in the enterprise may properly be an element of damage. The amount found is not, however, entirely consistent with either the original claim

or the evidence.   It does not appear that the claimant was paying himself any regular " wages," and we find no proof of the value of his services, in fact proof offered on that subject seems to have been excluded.   We think this item should be re-examined.

We do not sustain the claim of counsel for the State that certain items were barred by the Statute of Limitations because they accrued prior to the six months' period preceding the date of filing the notice of intention to file claim.   The claim could not accrue until the claimant discovered by an attempt to quarry the stone that he was prevented therefrom by the negligent act of the State, and six months had not elapsed after that time before the notice of intention to file claim was filed.   (*Dufel* v. *State of New York,* 198 App. Div. 97.)

The judgment of the Court of Claims should be reversed on both the law and the facts and a new trial granted, without costs.

All concur.

Judgment reversed on the law and facts and new trial granted, without costs of this appeal to either party.