HARRY W. PETZOLD et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31162.)

Court of Claims, June 30, 1952.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

*Armand L. Adams* for claimants.

RYAN, J. This is a motion made by the Attorney-General for an order dismissing both a notice of intention filed by the claimants herein on February 9, 1951, and a claim filed by the

claimants herein on January 26, 1952. The notice of motion states that it is based on the ground that claimants have failed to set forth facts sufficient to constitute a cause of action against the State of New York and on the further ground that neither the notice of intention nor the claim was timely filed and that this court does not have jurisdiction to hear and determine the claim. Request is also made for such other and further relief as to this court may appear just and proper in the premises.

So far as the motion to dismiss is addressed to the notice of intention it must be denied. The decision in *Chalmers & Son* v. *State of New York* (271 App. Div. 699) affirmed by a divided court (297 N. Y. 690) notwithstanding, we believe that there remains a distinction between a notice of intention and a claim and that the *Chalmers* decision must be regarded as applying only to the peculiar facts of that case. The purpose of a notice of intention is to apprise the representatives of the State of New York of the nature of the claim which is about to be made and to afford opportunity for an investigation and for preparation of a defense. (*Petronis* v. *State of New York,* 170 Misc. 223.) The filing of a notice of intention is not the commencement of suit. When it is required by statute, it is a condition precedent thereto. (*Federman* v. *State of New York,* 173 Misc. 830, and cases cited therein.) It is no longer required in Court of Claims practice but only optional. Where availed of it affords a suitor against the State additional time in which to prepare and file his pleading. (Court of Claims Act, § 10.) Thus in a situation where injuries are repeated, such as a continuing trespass wherein a plaintiff must find relief either in equity or in renewed actions (*Pappenheim* v. *Metropolitan Elevated Ry. Co.,* 128 N. Y. 436; *Mott* v. *Lewis,* 52 App. Div. 558) a claimant against the State may file a notice of intention every ninety days, and later, and within the two-year limitation of the first accrual of damages, file one claim combining therein his several accumulated causes of action. Neither *Paduano* v. *State of New York* (203 App. Div. 503) nor *Di Laura* v. *State of New York* (169 Misc. 912) hold anything to the contrary. (See, also, memoranda in *La Rose* v. *State of New York,* Claim No. 29916, Nov. 3, 1950 [199 Misc. 317] and March 12, 1951, not published.)

With these considerations in mind we approach the task of scrutinizing the multitudinous, repetitious and rather confusing allegations of the pleading filed by the claimants and here under attack. Claimants allege:

" Fourth: This claim is for damages suffered by the claimants by reason of the negligence of the State of New York, its officers, agents and employees, in connection with the planning, design, engineering and construction or reconstruction of the ' Petzold and Long Bridge ' and highway approaches thereto, extending over and across the west branch of the Owego Creek and being a part of the West Creek Road leading from the Hamlet of Flemingville to the Hamlet of Waltonville, in the County of Tioga and State of New York and known or designated as Tioga County Roads 308 and 408."
and

" Fifth: The claimants are the owners of premises situate in the Towns of Candor and Newark Valley, Tioga County, at the intersection of the west branch of the Owego Creek and the Tioga County highway commonly called the " West Creek Road " (Routes 308 and 408)."
and

" Sixth: The duties, obligations and responsibilities of the State of New York to the claimants, upon information and belief, arise from and out of the following facts and circumstances: * * * "

We quote no further. Here follow seventeen subparagraphs lettered from A to Q which, in the interest of brevity, we condense as follows: That the West Creek Road known as Routes 308 and 408 is a county road maintained by the County of Tioga; that the old bridge over the West Creek Road collapsed in 1941; that thereafter a temporary bridge was erected by the State and/or by the county and continued in existence until October 15, 1948; that the West Creek Road is a " principal secondary and feeder road " within the meaning of article IV of the Highway Law, that in or before 1948 the Tioga County Board of Supervisors requested the State Department of Public Works to include as part of the secondary and feeder road projects the reconstruction of the " Petzold and Long Bridge " and the approaches thereto; that the request was approved, the bridge to be constructed by the State of New York, with Federal aid; that thereafter the State Superintendent of Public Works caused a survey and plans to be made which were approved by the Tioga County Superintendent of Highways on April 9, 1948, and by the State Superintendent of Public Works on May 19, 1948; that the County of Tioga agreed to obtain the necessary road rights of way and by a separate agreement contracted to maintain the bridge after its completion by the State of New York and acceptance by the County

of Tioga; that the County of Tioga on May 24, 1948, commenced proceedings against these claimants in the County Court of Tioga County for the condemnation of land for temporary and permanent easements and rights of way involved in the relocation of the bridge and highway approaches thereto and that a judgment condemning and appropriating the required lands of the claimants was entered on June 18, 1948, but that claimants have never been compensated by the County of Tioga or anyone else for the value of the land so appropriated by the County of Tioga and for the consequential damages to the property of the claimants arising therefrom; that the State of New York, after advertising for bids, let the construction contract to a private contractor on September 30, 1948, and that the bridge and approaches were accepted by the State of New York on November 15, 1949, when the Superintendent of Highways of the County of Tioga was advised that the bridge and highway were being turned over to the county for maintenance pursuant to agreement; that the Tioga County Board of Supervisors has not by resolution accepted the bridge and approaches thereto from the State of New York; that during the period from May 19, 1948, to November 15, 1949, the County of Tioga was not charged with any responsibility and had no control over the construction, relocation and improvement of the bridge and the highway approaches thereto; that the West Creek Road and the Petzold and Long Bridge are now and at all times hereinafter mentioned have been in substantially the same condition as they were on November 15, 1949, and the County of Tioga has done nothing to change the structure, design, construction and intended operation and use of said bridge and highway approaches thereto.

Following the history of the construction of the bridge the claim in a paragraph numbered Eighth, which contains twelve subparagraphs, lettered A to L, alleges in great detail various specifications of faulty design and negligent construction affecting the grades and crown of the road, the construction of ditches, the installation of culverts, the construction of cattle ramps and other engineering defects which it is charged have created conditions harmful to the claimants' property and which it is alleged are permitted to continue. The most important of these allegations, it appears to us, is found in subparagraph G wherein it is alleged that the construction of the highway approaches to the bridge is such that the paved portion of the road is made a channel for water, causing the same to collect and to be carried and dumped at a low spot immediately in front of

claimants' barn. This seems to bring the pleading within the rule *of Noonan* v. *City of Albany* (79 N. Y. 470).

By paragraph Ninth of the pleading, which is divided into twelve subparagraphs lettered from A to L, many of which are several times subdivided and resubdivided, claimants recite at great length their ownership and operation of a dairy farm and give a history of incidents of damage sustained due to water draining into and upon claimants' premises on the following occasions: From November 1, 1949, to and including November 30, 1950; on December 1 and 2, 1950, December 10, 1950, February 1, 1951, February 13, 1951, March 30, 1951, June 9, 10, and 11, 1951, August 15, 1951, December 17, 1951 and at divers other times since November 1, 1949. The specific damages alleged chiefly concern injuries to and the loss of members of a herd of pure bred dairy cattle said to be due to the wet conditions of claimants' barnyard, barns and premises whereby it is alleged claimants have been required to pay out fees for veterinary services, have sustained a loss in milk production and have been obliged to slaughter valuable animals. There appears no plea that through the course of time since November, 1949, and in the face of repeated floodings, the claimants have removed their herd to other quarters or have otherwise taken steps to mitigate their damages. This omission may be important.

The Attorney-General's position may be summed up as follows: 1. That Roads 308 and 408 are county and not State highways and that the State of New York has no liability for defects in their construction. (Highway Law, § 58.) 2. That all of the damages alleged in the claim are consequential upon the taking of claimants' lands in condemnation and may properly be considered in the pending proceeding in County Court, Tioga County, and that this court has no jurisdiction to determine such damages. 3. That as to certain allegations with respect to the construction of ramps, the State has a complete defense in a written release executed by one of the claimants on September 28, 1949, a copy of which is attached to the motion papers. 4. That insofar as the claim is based on change of grade of the highway there is no existing statute which creates liability and, 5. That insofar as the claim is based on diversion of surface waters there is no liability at law in any event.

Finally the Attorney-General observes that, according to the pleading, the first item of claimants' damage was ascertainable on December 10, 1950, and, while denying any liability on this item as being based on the diversion of surface water,

admits that in respect thereto the notice of intention of February 9, 1951, was timely filed. However, with respect to all other items of damage which were ascertainable and accrued on the dates as set forth from February 1, 1951, to January 15, 1952, the Attorney-General asserts that none were set forth in the notice of intention and that as each and every one is a separate and distinct cause of action, it does not come within the ninety-day period and therefore the court has no jurisdiction.

In certain aspects we believe the position of the Attorney-General is well taken. For example, it can not be denied that the State has no liability for defects in the maintenance of a county highway, nor that insofar as claimants' damages may be shown to be consequential upon the appropriation of parts of their lands by the county, their remedy lies in another jurisdiction. Why Tioga County has not accepted the bridge, why it has not assumed maintenance thereof, why the claimants have not obtained an award from condemnation commissioners appointed as long ago as June 18, 1948, or why a pending damage suit against the county, of which claimants' counsel informs us, has not been pressed, are matters with which, perhaps, we ought not be concerned. But the thought suggests itself that the issues herein might be simplified if some of the litigation pending in other tribunals was first prosecuted to final determination.

With respect to the claim for negligence in the construction of cattle ramps if the document attached to the motion papers be a bar to it, the Attorney-General's motion falls within the provision of subdivision 6 of rule 107 of the Rules of Civil Practice and, not having been made within twenty days of the filing of the claim, is not timely and must be denied on that ground.

Whether claimants' damages were due to change of grade or were caused by diversion of surface waters are questions which can be determined factually only after hearing the proofs. Furthermore, it is quite apparent from the pleading that some at least of claimants' damages accrued within ninety days prior to February 9, 1951, and others within ninety days prior to January 26, 1952. Stripped of its nonessentials, claimants' pleading comes down to a cause of action in negligence based on errors in planning, design, engineering and construction of the bridge and its approaches. As such it presents issues of fact which must be resolved by the presentation of evidence, oral or documentary or both, and an issue of law as to the extent of the State's responsibilities under section 87-a of the

Highway Law pursuant to which the construction work was accomplished. If these issues are determined against the State of New York this court definitely has jurisdiction to make an award for such damages as can be established to have accrued within the time limitations of the Court of Claims Act. In hearing the proofs and in making its determination on the subject of the accrual of damages the trial court will undoubtedly be guided by such authorities as *Uline* v. *New York Central & H. R. R. R. Co.* (101 N. Y. 98); *Reisert* v. *City of New York* (174 N. Y. 196); *Dietzel* v. *City of New York* (218 N. Y. 270); *Dufel* v. *State of New York* (198 App. Div. 97) and *Inkawhich* v. *State of New York* (22 N. Y. S. 2d 761). Although rule 103 of the Rules of Civil Practice has not been invoked by the Attorney-General perhaps his effort has been in the direction of the remedy therein provided and may have somewhat clarified the issues with resulting benefit to the trial court. But as we believe that the Attorney-General has failed to show that the State of New York is entitled to judgment herein under either rule 107 or rule 112 of the Rules of Civil Practice, we deny his motion.

Enter order accordingly.