Bernard Ryan, P. J.
Since 1946 the claimants, husband and wife, have been owners of a tract of land consisting of 17.67 acres in the Town of Ripley, Chautauqua County, New York. The north line, or frontage, of the tract extends for 10 chains and 6 links along the Lake Road, which is State Highway Route 5. The south line, which is the same dimension, is described in the deed as running along the line of Lot No. 1 in the Third Township and Fifteenth Range of the Holland Land Company’s survey. The plot is a rectangle being 17 chains 52 links deep.
Claimants reside in the dwelling house on the property and operate a gasoline service station and a restaurant also located thereon. The buildings are near the Lake Road. As a source of water supply for their home and for the restaurant claimants relied upon a spring which existed at a point in the southwest corner of their tract of land about 50 to 60 feet north of their south property line, about 100 feet east of their west property line and 1,100 to 1,200 feet distant from the buildings. At the time of the purchase of the property by claimants water was piped from this spring to the buildings. After they came into possession claimants constructed a reservoir about 200 feet from the restaurant. The spring supplied an unlimited amount of fresh, pure water to the reservoir and in return to the ,buildings.
In the year 1956 the Erie Section of the New York State Thruway was constructed through Chautauqua County, extending generally from east to west in an area south of the claimants ’ property. No part of the tract of land owned by claimants *1011 was appropriated for Thruway right of way. However, the Thruway was built upon lands immediately adjacent to those of the claimants. The manner of the acquisition of the Thruway right of way at this location was not formally proved upon the trial of this claim. Presumably it was done legally, by appropriation or purchase. It will appear later that there is a dispute as to whether or not the Thruway is confined by the south line of Lot No. 1 in the Third Township and Fifteenth Range of the Holland Land Company’s survey (claimants’ south line as aforesaid) or has overstepped it.
Natural drainage in this part of Chautauqua County, in the area with which we are here concerned, is northerly and northeasterly towards Lake Erie. Prior to Thruway construction drainage of the lands immediately south of the claimants’ tract was by means of a small stream which circled back of their tract, entered it just at its southeast corner, and then flowed across lands of the claimants’ neighbor to the east. The flow of this stream was remote from claimants’ spring which was, moreover, protected by a knoll which rose between the lowlands surrounding the spring and the stream bed. During Thruway construction the right of way was graded. The high bank was cut down. A 42-inch culvert was placed under the eastbound Thruway lanes and under the westbound Thruway lanes. These two culverts were connected by culverts or ditches across the center mall. By this means surface waters were collected by ditches along the Thruway, fed into the culverts and discharged into the stream. Because of the altered course of the stream and the cutting down of the embankment waters now overflow onto claimants’ lowlands.
The grading and paving of the Thruway was completed in October, 1956. In November and December of 1956 claimants observed a change in the spring water supplied to their dwelling and restaurant. They then installed a clearing system. Between the middle of July and the middle of August, 1957 the situation became serious. Claimants investigated and found that their spring was filled with mud; that the bank which had protected the spring had been cut down and that water was being cast upon their property. The spring is now polluted and of no use. Claimants have expended about $700 for a clearing system. For the needs of their restaurant business and for household use they have been purchasing water trucked in from Westfield at a cost of $8 for 1,500 gallons, which is, approximately, a day’s supply.
Beyond doubt claimants have sustained grave injury. There are, however, serious doubts that they can recover in this suit. *1012 To begin with, the action is against the State of New York not against the Thruway Authority. True, this court has jurisdiction of both. (Easley v. New York State Thruway Auth., 1 N Y 2d 374 [1956].) But the State is not also separately liable for the torts of the Thruway Authority (Tompkins v. State of New York, 6 A D 2d 977 [1958]). That is a separate corporate entity. (Matter of Plumbing Assn. v. New York State Thruway Auth., 4 A D 2d 541 [1957].)
Furthermore, claimants have sued in trespass. They have pleaded that the pollution of and damage to the spring first became apparent during the month of June, 1957. The testimony indicates that the trouble was first noticed at least in the fall of 1956, at which time the clearing system was installed. There is further testimony that the investigation which disclosed that the mud had been deposited in the spring itself was not undertaken until July or August of 1957. The claim was filed with the Clerk of the Court of Claims August 26, 1957 and served upon the Attorney-General August 30,1957. Actions for continuing trespass come under the 90-day Statute of Limitations (La Rose v. State of New York, 199 Misc. 317 [1950]). The statute does not begin to run until the injured property owner is in a position to ascertain the full extent of his damages (Dufel v. State of New York, 198 App. Div. 97 [1921]; Inkawhich v. State of New York, 22 N. Y. S. 2d 761 [1940]).
Upon the theory that the damage to claimants’ property is permanent, counsel presents as the measure of damages, the diminution in value of the entire property by reason of the loss of the spring, that is, the difference in value of the property before Thruway construction and after it as given by the dpinion of a licensed real estate broker at $10,000. That opinion is based upon the assumption “ that there is no longer an adequate continuing source of water for this restaurant and there is no way to get such a source of supply from the spring that has been polluted by the State of New York.” But, the only testimony that an adequate water supply cannot be restored to the claimants’ property is again an opinion, that of a civil engineer, whose testimony was as follows:
“ Q. Mr. Woodbury, assuming, as you have testified, that this construction of the Thruway has brought a greater runoff of water to the premises of the claimants than would otherwise be present, is there any way, in your opinion as a civil engineer, that this situation could be corrected by the claimant to get this water back to its original course without going upon the lands of the State or the Thruway property and erecting pipes *1013 or tiles to correct this situation, or upon the lands of others? A. I haven’t been able to think of a way.
Q. As far as you know there is no way of correcting this situation? A. No.
Q. And this situation continues and will continue as long as these ditches and culverts remain in their present location? A. Yes.”
This is far from a showing that the situation resulting from the installation of the Thruway’s drainage system is permanent and cannot be corrected or that the damage to claimants’ property is irreparable. It may be that the culverts under the Thruway lanes are permanent installations but there is no proof before us that the waters flowing from those culverts cannot be diverted in another direction. There is no proof that the spring and the reservoir cannot be cleaned out and restored or that another source of potable water for the dwelling and restaurant cannot be obtained. There is no proof in the record as to what any of these remedies would cost and, except for the testimony about the clearing system and the purchase of tank loads of water, no proof of what damages were sustained in the period for which recovery as for a trespass might be had. (Dietzel v. City of New York, 218 N. Y. 270 [1916]; West v. State of New York, 205 Misc. 492 [1954].)
Claimants’ counsel, however, urges that a portion of claimants’ lands has in fact been appropriated and, upon the trial, he moved to amend the claim to plead accordingly. Upon that motion decision was reserved and we now proceed to consider its merits. A previous occupant of the premises, one who had lived there for 14 years with her husband, who then had title to the property, testified to the existence, at that time, of a wire fence which ran along the top of the bank, which during Thruway construction was removed by the construction contractor. This fence, the witness said, was regarded as marking the south boundary line of the 17.67 acres. To her knowledge nobody ever raised a dispute as to its location. It appears, and the proof before us will support a finding to that effect, that a new chain link fence erected by the Thruway Authority to denote the northern boundary line of its right of way extends from east to west in a line 12 feet farther north than the line of the remains of the old wire fence. However, the civil engineer, Woodbury, called as a witness by the claimants, testified merely that he located what he believed to be the south line of Lot 1 of the Holland Land Company’s survey as evidenced by the remains of the old wire fence. On the other hand the engineers who *1014 were in the field preliminary to and during Thruway construction testified to having located the property lines from the record of the deeds at Mayville (Chautauqua County seat) and by running the Lot lines through from Barden Boad to Forsythe Boad and that they thus located the Kosciuszko property line in the field. We hold that claimants have failed to prove a de facto appropriation of a 12-foot strip of their lands. We deny the motion to amend the claim. (Reese v. State of New York, 190 Misc. 316 [1947].)
Upon a review of all the testimony there are, as we have indicated, compelling reasons for a dismissal of this claim. Claimants are in an unfortunate predicament but they have proceeded upon the wrong theory and against the wrong party. Whatever trespasses were committed were the acts of the Thruway Authority which has not been sued. This ruling may seem highly technical but we believe it to be consonant with the decisions as they now stand. (Tompkins v. State of New York, supra.)
Upon the foregoing enter an order dismissing the claim.