Caroline K. Simon, J.
In 1953 claimant erected a concrete one-story building at 5504-5510 Third Avenue in Brooklyn. He and his wife are co-owners. New York City authorities issued a certificate of occupancy on November 25 of that year. Since its *498 erection the building has been continuously occupied by one tenant as a hiring hall and meeting room. No heavy machinery is used in the building, nor is any manufacturing performed there.
Gowanus Highway, an elevated viaduct, runs along Third Avenue past Mr. Guercio’s building. It is a well-traveled thoroughfare leading from downtown Brooklyn to the Belt Parkway and Long Island. New York State, as part of its program of highway improvement, reconstructed and widened this viaduct for a considerable distance, including the portion adjacent to Mr. Guercio’s property.
On May 27, 1964 claimant noticed cracks in the wall of his building. On June 29, 1964 a more thorough inspection was made by an engineer, at claimant’s request. Mr. Guercio thereafter filed a claim against the State of New York alleging negligence in the breaking up of the concrete pavement of the viaduct and the driving of piles preparatory to widening the roadway as being the cause of damage to his building.
Notice of intention to file a claim was received and filed by the Clerk of the Court of Claims on July 11,1964 and by the Department of Law on July 13, 1964. The claim itself was filed in both offices on June 20, 1966. It seeks $4,000, a sum which, as the claim states, is in excess of the damage amount adjustable by agreement with the Superintendent of Public Works, pursuant to subdivision 17 of section 30 of the Highway Law. The claim has neither been assigned, nor tried, nor brought before any other court or tribunal for determination. A similar suit has been instituted in the New York City Civil Court against the contractor responsible for the reconstruction of the same segment of that highway.
Mr. Guercio testified that he first noticed construction work on the highway in his neighborhood in 1961, and that the work continued for three years. He described the work as heavy machinery pounding and breaking the concrete roadway near his building, pile driving for foundations, with resulting vibration and noise. Mr. Guercio stated that he visited his building frequently. and could feel the force of the hammers employed. He described it as terrific and likened it to an earthquake.
Claimant described the building as having been constructed entirely of solid, unreinforced concrete, with footings of that material extending from five feet below ground to five feet above ground. He said the walls above the 20-inch wide footings also were made of solid concrete in blocks one foot thick. The inside was unplastered and the walls had been painted dark blue and green by his tenant. The building measured 65 feet across its front and rear, with a depth of 100 feet.
*499 .On May 27,1964 Mr. G-uercio visited the building, in response to a request by his tenant to have a window repaired. As he approached the window, located on the southerly wall, he noticed a crack about one quarter of an inch wide in that wall. He then noticed a similar crack on the westerly inside wall. He went outside the building and inspected the exteriors of both walls, noting several cracks, some of which extended upward from the footings. Photographs of these cracks were taken in early 1968 and were introduced into evidence as claimants’ Exhibits 6 through 18, inclusive.
Mr. Guercio added that he had seen no cracks on any of his previous visits to the building, although he never before examined it. An engineer, retained in June, 1964 to survey the damage, submitted an estimate of $2,065 to repair that damage. The expert testified that the building could never be completely restored to its prior condition, even if the repairs were made. The repairs have not yet been made. On cross-examination Mr. G-uercio admitted that the pile-driving machinery he observed had been operating several blocks away from his building on Third Avenue.
Portions of the testimony adduced in an examination before trial of the State’s assistant to the area supervisor of construction were read into the trial record. They disclosed that the rebuilding of the Gowanus Expressway was divided into four projects. The contract for work in the vicinity of Mr. G-uercio’s building was known as FIGE 61-2 and included the territory from 54th Street to 65th Street. The engineer stated that possibly 15 columns were installed between 55th and 56th Streets after November 1, 1963, that cranes were located on the elevated highway to deposit concrete on it and to erect the steel columns. He said that a small bulldozer was used for excavations at street level, but no pounding machinery had been employed. He stated further that excavations to place four columns there were commenced on the westerly side of Third Avenue between 54th and 55th Streets in late August, 1963. He said that the footings were set 7 to 10 feet into the ground and that excavations ceased when the footings reached a stable depth level as determined by borings which had been previously taken in the area.
The engineer’s diary included notations of pile driving in the area between 61st and 64th Streets during an extended period of time from October, 1961 to February, 1963, and later entries of piles having been redriven on August 30 and September 3, 1963.
*500 He explained the use of a pile-driving rig in his examination before trial and reported that a jack hammer or chipping machine had been used for two to four days beginning August 2, 1963 to break up concrete on the existing elevated highway on the westerly side of the area between 51st and 55th Streets. He described the composition of the Third Avenue roadway at street level as asphalt with a six to eight inch concrete base beneath it.
A licensed engineer specializing in concrete and structural work testified for claimant. He said he had inspected Mr. Guercio’s building, noting six cracks on the outside of the west wall, starting at grade and running upward, some to the roof. He noticed four similar cracks on the south wall. He stated that his inspection of the interior of the building showed cracks which related to the outside cracks.
He further testified that the interior cracks showed signs of having occurred after the building had been painted, since there was no paint in the cracks. As to the outside wall cracks, he said that they seemed newly made, since the exposed concrete appeared fresh, without dirt or accumulation of debris from weather. He stated that the transmission of ground shock waves to the foundation was the cause of these fissures. As to the exact piece of equipment that caused the shock waves, he could not testify, but he felt that the settlement of the foundation was caused by construction in the neighborhood. He said that concrete breakers and pile drivers could generate sufficient force to cause vibrations and shock waves producing the cracks he inspected.
On cross-examination, the engineer stated that a concrete building erected without steel reinforcement rods is subject to expansion and contraction with temperature changes, and that cracks can appear, especially when expansion joints are not incorporated in the foundation. He added, however, that cracks due to temperature changes would normally appear within three years after the building has been erected, and that they would not take 10 years to develop. He gave as his expert opinion that the cracks he inspected were caused by external vibrations to the foundation of the building.
The testimony of a neighbor of Mr. Guercio as to the appearance of machinery and equipment in the neighborhood added little to the proof, since he was unable to pinpoint dates or places with any degree of accuracy.
At the conclusion of claimants’ case, the State moved to strike all testimony relating to events occurring in October, 1963 as being beyond the Statute of Limitations relating to the filing of *501 a notice of intention, pursuant to subdivision 3 of section 10 of the Court of Claims Act. Counsel argued that damage occurring prior to 90 days before the notice of intention was filed on July 11,1964 would automatically be barred from recovery.
Claimants’ counsel contended that the statute began to run only from the time claimant discovered the damage, and that the instant claim involved a series of shocks which might only reveal themselves as cracks after a cumulative or continuing process, and that the testimony included references to work having been performed in 1964.
The court reserved decision on the State’s motion, as well as its motions to dismiss for failure to prove a prima facie case and for failure to prove the required elements of damage.
The State’s expert, a qualified civil engineer, stated that he inspected Mr. Guercio’s building on October 4, 1966. He observed four cracks on the west wall and six cracks on the south wall. He gave as his professional opinion that the cracks were due to a combination of lack of reinforcement in the concrete and contraction or shrinkage of the concrete due to weather and temperature changes. He explained that vibration cracks start at the base of the footings and work themselves upward, that they are diagonal cracks that come in pairs, forming an X, and usually at right angles.
This expert likened vibration waves to waves resulting from dropping a stone into a pool of water. The ripple emanating from the center, if of sufficient intensity amplitude, would rock a building first in one direction, and then as it passed by, would rock the building in the other direction, resulting in a wall cracking in the form of an X pattern. He added that this was not the situation he found in the Guercio building. He explained that the driving of piles four and one-half blocks away from the building could not cause the damage complained of, since the effect of such a force is in inverse proportion to the distance, and that shock waves travel at a speed which varies, depending upon the character of the soil. He said the rate ranged from 20,000 feet per second in rock to 2,000 feet per second in wet, sandy soil, and that once the vibrations cease, the damage ceases. He. stated that it would be impossible for vibrations to so weaken a building’s foundation that damage would not appear until months later.
The expert explained another theory in vibration damage: that the weaker structural material breaks first, and that glass and plaster are considered to be the weaker materials. He said that if glass and plaster within the intervening area do not break, then there is no likelihood that concrete, wood or steel *502 would break. He added that vibration damage would have occurred in all four walls of the building, and the fact that only-two walls were cracked also ruled out the vibration theory of damage.
The State’s expert interpreted some of the cracks depicted in claimants ’ photographic exhibits as having been a result of the shrinkage of the mortar separating the concrete blocks. He differentiated this type of mortar separation from what he called a 1 ‘ flaking out ’ ’ which would have been produced by vibration, and which he stated did not appear either on his inspection visit or in the photographs. When asked whether the use and movement of heavy equipment on Third Avenue, such as payloaders and scraping machines, could produce vibration damage, he said it could not. When asked whether vibration due to noise could produce claimants’ damage, he explained that noise is air concussion, and that it would take what he described as a sonic boom to produce such damage. The expert conceded, on cross-examination, that cracks due to temperature changes usually would reveal themselves within a year from the building’s completion.
In ruling on the State’s motion to strike all testimony relating to events occurring in October, 1963 as being beyond the 90-day statutory requirement, the court is guided by the well-settled principle that the 90-day period does not begin to run until the injured property owner can ascertain the full extent of his damage (Waterman v. State of New York, 19 A D 2d 264, affd. sub nom. Williams v. State of New York, 14 N Y 2d 793; Dufel v. State of New York, 198 App. Div. 97; Allen v. State of New York, 208 Misc. 385, affd. 2 AD 2d 644; Paduano v. State of New York, 203 App. Div. 503; Kosciuszko v. State of New York, 15 Misc 2d 1009). Claimants’ position is that a continuous series of events occurred which culminated in the damage to the building. The court denies the State’s motion to strike.
The court has considered the law as stated in Petillo v. Kennedy & Smith (263 App. Div. 821) which involved negligence in the manner in which sheeting and piling were driven in the construction of a sewer. The Second Department memorandum stated: , “ That portion of the work, according to that proof, could have been done with the use of less power with little or no vibration, even though more slowly. No steps were taken to correct the manner of doing the work even after notice of the damage being done, despite the proximity of the plaintiffs’ building to the place where the defendant was working; therefore, a finding of negligence was justified.”
*503 The court also has considered the case of Fagan v. Pathe Inds. (274 App. Div. 703, 708) in which Judge Van Voorhis likened pile driving to blasting when he said: “In blasting cases, it is well established that damage to nearby property resulting from vibration alone is not enough to create liability, unless the blasting has been negligently performed — for example, as a result of the use of excessive charges of dynamite, when a larger number of smaller blasts would have been sufficed. (Booth v. Rome, Watertown & Ogdensburg Terminal R. R. Co., 140 N. Y. 267.) The same principle has been applied, to pile-driving ”. (Italics added.) Judge Van Voorhis quoted Petillo v. Kennedy & Smith (supra).
These decisions require that for claimants’ allegation of negligence to prevail, it must be established by a fair preponderance of the evidence, that the described activities conducted during the widening of the Gowanus Highway were the proximate cause of the damage sustained, and that the damage could have and should have reasonably been anticipated as the natural and probable consequence of the acts claimed to constitute negligence.
The court finds that claimants’ proof has not met this test. “ The rule is well-settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible. If the matter is left in doubt, and it is just as probable that the accident was the result of one cause as the other, there is no liability. In these circumstances a verdict holding defendant answerable to plaintiff would be based upon mere speculation. ” (1 Warren’s Negligence, § 5.10.)
In the instant fact pattern, the expert engineers for the parties offered conflicting testimony as to the causal connection between the highway construction activities and the cracking of the walls of the Guercio building. Two additional factors, the lack of reinforcement in the concrete used to construct the building, and the separation of the mortar between the concrete blocks, were offered as possible explanations for the cracked condition. There was a difference of opinion as to the effect of work occurring four and one-half blocks away from the building. No compelling proof was adduced that the cracks did not precede the work done by the State. No evidence was produced as to negligent operation of the equipment.
Upon the proof adduced, the court finds that the chain of causation has not been established by a fair preponderance of *504 the credible evidence. The claim must be, and hereby is dismissed.
At the conclusion of claimants’ case, the State moved to dismiss for failure to establish a prima facie ease and for failure to prove the required elements of damage. The court reserved decision on these motions, which the State renewed at the termination of the trial in addition to a further motion for judgment in the State’s favor as a matter of law. The court again reserved decision. These motions are now granted.